UNITED STATES of America, Appellee,

v.

**Keith L. ARTHUR, Appellant.**

No. 78–5098.

United States Court of Appeals,
Fourth Circuit.

Argued May 11, 1979.

Decided Aug. 3, 1979.

Dennis W. Dohnal, Richmond, Va. (Bremner, Baber & Janus, Richmond, Va., on brief), for appellant.

E. Leslie Hoffman, III, Asst. U. S. Atty., Charleston, W.Va. (Robert B. King, U. S. Atty., and Wayne A. Rich, Jr., Asst. U. S. Atty., Charleston, W.Va., on brief), for appellee.

Before WINTER, BUTZNER and PHILLIPS, Circuit Judges.

WINTER, Circuit Judge:

As a result of his second trial, defendant was convicted on ten counts of misapplication of bank funds in violation of 18 U.S.C. § 656. His initial conviction on these same charges was reversed by us because of im-

proper jury instructions in *United States v. Arthur*, 544 F.2d 730 (4 Cir. 1976) (*Arthur I*), and we affirmed the district court's rejection of defendant's claim of double jeopardy when the government elected to try him anew. *United States v. Arthur*, 565 F.2d 159 (4 Cir. 1977) (unpublished) (*Arthur II*).

Defendant attacks the validity of his second conviction on the grounds that (1) the evidence was legally insufficient to show that in his misapplication of bank funds he intended to injure the bank, and (2) the district court committed reversible error in admitting his testimony at his first trial into evidence at the second. Defendant also contends that the district court abused its discretion when it prescribed as a condition of probation that he accept full-time employment without salary at any charitable organization in the State of West Virginia approved by the probation department and the district court for a period of two years.

We are not persuaded by any of defendant's arguments. We affirm.

I.

The theory of the government's case and much of the evidence is set forth in our opinion in *Arthur I*. Briefly stated, the government adduced evidence that defendant was president and a director of the Valley National Bank (Valley), in Huntington, West Virginia. He also served as county clerk, an elected position which he had occupied for seventeen years. The evidence showed that defendant drew money on at least ten separate occasions from a "Borrowers' Life Insurance Account" at Valley for purposes of increasing "goodwill" toward Valley. This account held funds which Valley had earned as commissions on life insurance policies sold in connection with loans. Defendant used funds from this account to pay favors to various people, in particular Assistant State Treasurer RyKoskey. RyKoskey made day-to-day decisions on depositing West Virginia treasury funds, and defendant gave him various gifts to induce him to deposit state funds at Valley. These favors included gifts of $120 worth of postage stamps to enable RyKos-

key to make political mailings, paying Ry-Koskey's expenses at a golf outing, and the like. RyKoskey's favors totaled about $1,000. The effort evidently paid off, since RyKoskey maintained a noninterest-bearing account for the state at Valley that often amounted to $700,000. Occasionally, when defendant found that Valley's reserves were tight and in need of a large deposit, he would call RyKoskey, who would oblige him by transferring some state funds from another bank to the state's account in Valley. In addition, defendant made political gifts to other local political figures from the Borrowers' Account in the total amount of about $600.

Defendant testified at his first trial, and at his second trial the government made known its intention to offer into evidence and read to the jury the transcript of defendant's testimony at the first trial, deleting only testimony which related to the eight counts on which defendant had been acquitted. Defendant objected to this use of his prior testimony on a number of substantive grounds. In a hearing outside the presence of the jury, the district court overruled these objections, but it raised a question as to whether defendant's prior testimony had been given with knowledge that he was not required to testify or to make any statement for or against himself. When defense counsel declined to stipulate the point, the district court called defendant as a witness; and when defendant testified that he could not recall whether he had been advised that he had a right not to testify, and the district court indicated that it would not admit his prior testimony unless the government called defendant's prior counsel as witnesses and interrogated them as to the advice that they had given the defendant, the government called the lawyers as witnesses. Although both attorneys invoked the attorney-client privilege and defendant declined to waive the privilege, the district court required both lawyers to answer. They both testified that they had advised defendant with respect to his right not to testify, whereupon the district court permitted the edited transcript of defendant's prior testimony to be read to the jury.

## II.

It is settled that an essential element of misapplication of bank funds in violation of § 656 is the intent to injure or defraud the bank. *See Arthur I*, 544 F.2d at 736. Defendant concedes that the jury was properly instructed on this point, but he contends that there was not legally sufficient evidence to support a finding of such intent and therefore the district court should have granted his motions for judgment of acquittal. Specifically, defendant relies upon the holding in *Arthur I* that § 656 required an intent to inflict pecuniary injury, not merely injury to reputation or community standing, and he asserts that the evidence establishes that his intent in making disbursements from the Borrowers' Life Insurance Account was to increase goodwill to Valley and to bring it pecuniary benefit.

We reject this contention. It is answered completely by *United States v. Caldwell*, 544 F.2d 691 (4 Cir. 1976). There, in rejecting the contention that evidence of a similar scheme of payments and gifts to public officials failed to show intent to injure the bank because in fact the purpose of the scheme was to benefit the bank, we said:

> The defendant's wrongdoing was complete at the time when he made illegal payments in accommodations and services to Kelly and RyKoskey and their wives; at that point, defendant had misapplied bank funds by using the money for an illegal purpose. Such misapplication injured the bank, and as such gave rise to the inference that the defendant had the requisite intent. . . .
>
> The fact that the defendant had as his ultimate goal the unlawful preferment of the bank by Kelly and RyKoskey is irrelevant. Uniformly it is held that the promise or hope of a better life to come for the bank does not render lawful that which was unlawful . . .. Nor is it essential to a conviction that the proof show an intent permanently to deprive the bank of its property.

*Id.* at 696–97.

In deciding defendant's first appeal, we did not depart from *Caldwell*. In *Arthur I*,

Judge Russell, writing for the court, was careful to note that, unlike *Arthur I* where the conviction was reversed, "the issue in *Caldwell* was not the adequacy of the trial court's instructions but the legal sufficiency . . . of the evidence." 544 F.2d at 736 n.10. Thus, read together, *Caldwell* and *Arthur I* stand for the proposition that a jury in a § 656 prosecution must be properly instructed that intent to inflict pecuniary injury to the bank is an essential element of the offense, but that a jury may properly find that such intent existed when the proof shows the expenditure of bank funds to bribe public officials. By this test, the proof in the instant case was legally sufficient to support a finding of the requisite intent.

Indeed, in this case, the proof was even stronger than in *Caldwell*, because here defendant was himself a public office holder and the jury could conclude that defendant's expenditure of Valley's funds was intended to advance defendant's political fortunes rather than to aid the bank. Moreover, Valley had an established fund for legitimate goodwill expenditures, so that it could be inferred from defendant's clandestine use of another fund that he possessed the requisite criminal intent. Finally, we note that in *Arthur I* we stated that, if the jury had been properly instructed, the evidence would have sustained defendant's conviction, 544 F.2d at 734, and we relied on this statement in denying defendant's claim in *Arthur II* that retrial was barred.

### III.

Defendant correctly concedes that "it may be permissible . . . to allow the prosecution to introduce in its case the recorded testimony of an accused from an earlier trial proceeding . . . " (Appellant's Brief pp. 10–11). *See Edmonds v. United States,* 106 U.S.App.D.C. 373, 377–78, 273 F.2d 108, 112–13 (1959) (in banc), *cert. denied,* 362 U.S. 977, 80 S.Ct. 1062, 4 L.Ed.2d 1012 (1960). *See also United States v. Anderson,* 481 F.2d 685, 696 (4 Cir. 1973) (prior testimony at state hearing), *aff'd,* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974), *cf.* Fed. Evidence Rule 804(b)(1). He con-

tends, however, that introduction of his prior testimony was improper, because (a) it clearly revealed that an earlier trial had been held and the jury could infer that defendant had been convicted, all to his prejudice, and (b) the prior testimony contained evidence in response to testimony of government witnesses not presented at the second trial. Further, defendant contends that the district court violated his fifth amendment privilege in calling him as a witness to establish the voluntariness of his prior testimony, and that the district court permitted his attorney-client privilege to be infringed when it required his lawyers to disclose the advice they had given him about his right not to testify.

We do not think that admission of the prior testimony was improper, although we agree that there were serious errors, albeit not grounds for reversal, in the manner in which admissibility of the prior testimony was established. We discuss these seriatim.

■ Of course, the prior testimony disclosed that defendant had testified in a previous trial. But we do not think that the testimony necessarily showed that defendant was the person being tried. Certainly it did not show that defendant was convicted. In short, we see no substantial prejudice to defendant. While his testimony contained references to facts not in issue at the second trial, again we see no prejudice. The references put in context the prior testimony which was relevant in the second trial. That context was not so inflammatory that we think that the jury was prejudiced. At most, defendant would have been entitled to a limiting instruction to the effect that certain designated answers were admitted to provide the context for relevant evidence but that they were not to be considered in deciding the issues submitted to the jury. However, defendant made no such request.

■ There was error in the manner in which the district court established to its satisfaction the admissibility of the previous testimony. The fifth amendment right of an accused not to incriminate himself includes the right not to take the stand at all, and this right was violated when defendant

was called as a witness by the court and interrogated about the advice given him about his right not to testify at the first trial. Further, we may assume for present purposes that such advice, if any, had been given in confidence and that his attorney-client privilege was therefore violated when his prior lawyers were compelled to testify. The district court was led into these errors by its commendable concern for the defendant's rights. But as we view the case, interrogation of the defendant and his counsel was unnecessary. The transcript which was offered showed on its face that defendant was represented by counsel at the first trial and that he was called by them as a witness in his own defense. In the absence of any evidence to the contrary, we think that there was a presumption that defendant had been fully advised of his rights before he testified. If there was any question about whether his testimony was given with full knowledge of his rights, it was incumbent on him to make the claim and come forward with evidence to rebut this presumption. If he offered his own testimony in support of his claim, he would waive his fifth amendment privilege and, if he asserted that his lawyers had not advised him properly, he would also waive the attorney-client privilege.

Although error, these violations of defendant's rights do not constitute reversible error. We are convinced that they were harmless beyond a reasonable doubt because they had no effect whatever on the outcome of the trial. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The interrogation of defendant and his counsel took place out of the presence of the jury and the jury was not told what had occurred. The prior testimony, as we have held, was admissible. The jury thus had no improper knowledge to affect its deliberations. The error was neither so egregious nor the likelihood of its repetition so substantial that we think that we should exercise our supervisory power to disturb the verdict.

## IV.

We do not think that the district court abused its discretion in the condition that it imposed upon the granting of probation. Generally a sentencing court has very broad discretion in imposing conditions on probation, so long as the conditions bear "a reasonable relationship to the treatment of the accused and the protection of the public." *United States v. Pastore,* 537 F.2d 675, 681 (2 Cir. 1976). We do not suggest that compelling charitable service is an appropriate condition of probation in every case, but we think it an acceptable one here. Certainly the rehabilitative potential of such service is greater than the rehabilitative program of most prisons. The donation of charitable services to the community is both a deterrent to other potential offenders and a symbolic form of restitution to the public for having breached the criminal laws.

AFFIRMED.