William HIGDON, Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 79–2533.

United States Court of Appeals,
Ninth Circuit.

May 22, 1980.

David P. Curnow, McWilliams, Amos & Curnow, San Diego, Cal., for petitioner-appellant.

Andria Sheridan Ordin, U.S. Atty., Los Angeles, Cal., for respondent-appellee.

Before GOODWIN, HUG and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

This is an appeal from the denial of a motion brought under 28 U.S.C. § 2255 (1976).[1] In his motion appellant Higdon attacked an order entered by the district court revoking his probation for violation of conditions of probation. Because the basis for his challenge is the contention that the imposition of certain of the conditions violated the eighth amendment to the United States Constitution and the Federal Probation Act, 18 U.S.C. § 3651 et seq. (1976),[2]

---

1. 28 U.S.C. § 2255 provides in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion for such relief may be made at any time.

2. 18 U.S.C. § 3651 provides in pertinent part:

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for

and that a revocation based on their violation was therefore void, we treat the motion as an attack on the sentence. We find that the conditions imposed violated the Federal Probation Act,[3] and reverse and remand for further proceedings.

## I. FACTS

Former U.S. Army Master Sergeant William Higdon operated several large servicemen's clubs in Vietnam. He and his cohorts devised an elaborate overpayment and kickback scheme that defrauded the government of several hundred thousand dollars. Higdon was also the "money man" for the operation, depositing over $300,000 into a Swiss bank account over a fourteen month period.

In 1971, the scheme was uncovered and Higdon was courtmartialed, found guilty, and sentenced to dishonorable discharge and forfeiture of all benefits.[4] He was placed on "excess leave" without pay pending the outcome of his military appeal, and was finally dishonorably discharged, with loss of benefits confirmed, in 1976. A grand jury returned criminal indictments against Higdon in 1971. In 1973, he pleaded guilty to a single charge and received a five-year prison term suspended upon acceptance of a series of probation conditions, including the following two "special conditions":

(1) forfeiture of all assets (including his home) to the government; and

(2) agreement to work for charity full-time for three years (6200 hours) without pay.[5]

Higdon returned to Georgia, and his case was assigned to the federal probation office there. Between 1973 and 1976 Higdon served as a volunteer for the Georgia Department of Recreation in order to fulfill his charitable work requirement. He performed satisfactorily and reported regularly to his probation officer. To support himself and his wife and two young children, he operated a tavern which had been set up with the help of friends. In 1976, his wife left him, and he was required to make support payments of $500 per month. Eventually, the pressure of working two full-time jobs and the travails of a deteriorating family life led to poor health and a drinking problem.

In 1977, the probation office became suspicious when Higdon fell behind on his monthly time reports and could not be found at the gymnasium or ballfield to which he had been assigned by the Recreation Department. His probation officer ordered that recent monthly time sheets showing hours worked per week be broken down day-by-day. He discovered that Higdon was claiming time for many days when the gym and ballfield had actually been closed and that Higdon had lately been working only a few of his reported thirty hours per week. Higdon had also trans-

---

such period and upon such terms and conditions as the court deems best.

. . . . .

The court may revoke or modify any condition of probation, or may change the period of probation.

The period of probation, together with any extension thereof, shall not exceed five years.

While on probation and among the conditions thereof, the defendant—

May be required to pay a fine in one or several sums; and

May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had; and

May be required to provide for the support of any persons, for whose support he is legally responsible.

. . . . .

The defendant's liability for any fine or other punishment imposed as to which probation is granted, shall be fully discharged by the fulfillment of the terms and conditions of probation.

3. Since we find that the conditions imposed on Higdon were unlawful under the Federal Probation Act, we need not decide the eighth amendment issue.

4. This included loss of pension rights accumulated during twenty-nine years of military service.

5. The probation office apparently modified the probation sentence to allow the 6200 hours to be contributed over a four or five-year period. (The record is unclear about which period was finally agreed upon.)

gressed by lying about his whereabouts on a particular morning and persuading the state senator in charge of the committee with oversight of the Recreation Department to write a letter verifying his fraudulent time sheets.

Because of these violations of his probation conditions, the probation officer petitioned the judge to revoke Higdon's probation. At the revocation hearing Higdon admitted the violations, probation was revoked, and Higdon was committed to Maxwell Field to serve his full five-year prison sentence with no credit for the four years and four months he had spent on probation. Higdon requested modification of the prison sentence under rule 35 of the Federal Rules of Criminal Procedure. When this was denied, he collaterally attacked his sentence under 28 U.S.C. § 2255 (1976), alleging that the probation conditions were unlawful and amounted to cruel and unusual punishment and that revocation based upon violation of them was therefore void. The district judge took jurisdiction but denied the motion. Higdon here appeals the denial.

## II. JURISDICTION

■ The issues raised by Higdon are properly cognizable in a section 2255 motion. The challenge is to the sentence of a prisoner in custody under sentence for a federal crime, and he presently has no other remedy available to him.[6] He contends that he has been jailed for violation of probation conditions that constitute cruel and unusual punishment under the eighth amendment and that violate the Federal Probation Act. The constitutional challenge is, of course, a basis for a section 2255 collateral attack. However, if the constitutional challenge is not sustained, to prevail Higdon must establish that nonetheless there is "a fundamental defect which inherently results in a complete miscarriage of

---

6. *See Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

7. A third factor in the *Consuelo-Gonzalez* test is the extent to which conditions serve the legitimate needs of law enforcement officers. *United States v. Pierce*, 561 F.2d at 739; *United*

justice." *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). *See also United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).

## III. THE FEDERAL PROBATION ACT

### A. Introduction

■ The core issue is whether the forfeiture and charitable work conditions were within the range of discretion accorded a trial judge by the Federal Probation Act, 18 U.S.C. § 3651 et seq. (1976). Our guide is the test set forth in *United States v. Consuelo-Gonzalez*, 521 F.2d 259 (9th Cir. 1975) (en banc), in which the court held that probation conditions must be reasonably related to rehabilitation of the offender and protection of the public. 521 F.2d at 263–64. *See also United States v. Pierce*, 561 F.2d 735, 739 (9th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978) (explaining and applying *Consuelo-Gonzalez*). This test is applied by a two-step process. First, we consider the purposes for which the judge imposed the conditions. If the purposes are permissible, the second step is to determine whether the conditions are reasonably related to the purposes. In conducting the latter inquiry the court examines the impact which the conditions have on the probationer's rights. If the impact is substantially greater than is necessary to carry out the purposes, the conditions are impermissible.[7]

### B. Impermissible Purposes

■ The primary purpose of probation is to rehabilitate the offender. Therefore, the only factors which the trial judge should consider when deciding whether to grant probation are the appropriateness and attainability of rehabilitation and the need to protect the public by imposing conditions which control the probationer's activities.

---

*States v. Consuelo-Gonzalez*, 521 F.2d at 262. This factor may be relevant in cases where, for example, probation officers wish to conduct occasional searches to insure that a convicted drug dealer does not resume operations, but it has no relevance to Higdon's case.

■ Punishment of an offender may not be the primary purpose of the judge's imposition of probation.[8] Nor may probation conditions be the vehicle for circumvention of statutory sentencing limits.

■ The transcript of Higdon's sentencing hearing[9] reveals that the judge was understandably outraged by Higdon's abuse of a position of high public trust during wartime. In fact, he expressed dissatisfaction with the maximum five-year statutory sentence[10] as too lenient for Higdon.[11] Nonetheless, because Higdon, along with the other defendants, had cooperated with the ongoing congressional investigation of corruption in the armed services, and because the judge had in mind rigorous probation terms, probation was granted. The probation conditions were indeed very severe in their impact, possibly implicating an impermissible purpose under the first part of the *Consuelo-Gonzalez* test. However, we need not and do not decide that question.

## C. Reasonable Relationship

■ We are compelled to find that the special conditions were impermissible under the second part of the *Consuelo-Gonzalez* test because they were not *reasonably related* to rehabilitation of the offender or protection of the public.

■ The fact that the conditions restrict Higdon's freedom is not dispositive—virtually all probation conditions are restrictive, and this circuit has often upheld as reasonable conditions which require the abandonment or limitation of otherwise lawful activities. *United States v. Furukawa*, 596 F.2d 921 (9th Cir. 1979) (prohibiting association with reputed criminals); *United States v. Pierce*, 561 F.2d 735 (9th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978) (requiring disclosure of financial assets); *United States v. Consuelo-Gonzales*, 521 F.2d 259 (9th Cir. 1975) (en banc) (requiring consent to searches without probable cause by probation officers); *Malone v. United States*, 502 F.2d 554 (9th Cir. 1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975) (prohibiting membership in lawful social and political organizations); *United States v. Nu-Triumph, Inc.*, 500 F.2d 594 (9th Cir. 1974) (prohibiting operation of a lawful business). However, although the judge has substantial discretion when assembling a set of probation conditions, they must be narrowly drawn to achieve rehabilitation and protection of the public without unnecessarily restricting the probationer's otherwise lawful activities. If the impact of the conditions is needlessly harsh, the conditions are impermissible.

8. *United States v. Consuelo-Gonzalez*, 521 F.2d 259 (9th Cir. 1975) (en banc). We recognize, however, that probation conditions may have an *incidental* punitive effect, in that any restriction of liberty is in a sense a "punishment."

9. Evaluation of the judge's purpose is a very narrow inquiry. In most cases it will be limited to the text of the conditions and to the transcript of the judge's remarks at the sentencing hearing. *See United States v. Pierce*, 561 F.2d at 739 n. 2.

10. 18 U.S.C. § 371 (1976).

11. The judge made the following remarks at the hearing during which he sentenced Higdon and Higdon's three codefendants:

Well, the easiest thing in the world for me to do in each of these four cases would be to impose a prison sentence. . . . I am sure the sentence, if I did do that, could be easily served. All four of you are strong physical persons who could endure without much difficulty incarceration in the civil penal system. . . .

. . . [I]f I sent you to jail, when you got out you would benefit and I guess [that forfeiture and work conditions] [are] more of a severe punishment than the physical incarceration in a prison for a number of years.

You are military men and you are going to adjust overnight to prison. What have I done except indicate disapproval? So what I'm going to do [is impose the conditions].

I do want to state to you that the sentences are unusual and your crimes are unusual. I reiterate again, it would be easy to put you in jail for a period of time, provide a whitewash for your sins, but maybe working charitably for a period of time may attempt to pay back something which you owe the country.
Reporters' Transcript of Proceedings, May 29, 1973, at 55–64.

 The reason for requiring the judge to draw the probation conditions narrowly is the same as for the rule requiring the judge to evaluate an offender's capacity to pay a fine or meet a restitution payment schedule and to set the terms accordingly. *United States v. Boswell*, 605 F.2d 171 (5th Cir. 1979); *United States v. Wilson*, 469 F.2d 368 (2d Cir. 1972); *United States v. Taylor*, 321 F.2d 339 (4th Cir. 1963). *See also Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974) (upholds Oregon's recoupment statute, an important feature of which is the sentencing judge's determination that defendant will be able to meet the payments); *United States v. Estrada de Castillo*, 549 F.2d 583, 585–86 (9th Cir. 1976) (Hufstedler and Ely, JJ., concurring specially, disapproving use of commuted fines that defendant will probably not be able to pay). Similarly, when imposing forfeiture and charitable work requirements, the judge must evaluate the offender's physical, psychological, and financial condi-

tion [12] and must not order a work schedule which leaves inadequate time for paid employment and substantially interferes with maintenance of a normal family life.[13] *See* ABA Standards Relating to Probation, § 3.2(b) (Approved Draft 1970) (recommending that "[c]onditions imposed by the court should be designed to assist the probationer in leading a law-abiding life," and "reasonably related to his probation and not unduly restrictive of his liberty . . ."). Otherwise, however wrongly, the offender increasingly resents the conditions. Eventually he is likely to falter and to resort to deception, thus frustrating the rehabilitative purpose of the conditions. This is precisely what happened to William Higdon.

 Analyzed separately, the forfeiture and charitable work conditions imposed on Higdon may each have been within the established boundaries of judicial discretion and hence permissible.[14] But their cumula-

12. This information is readily available to the judge from the probation officer's presentence report. *See* Division of Probation, Administrative Office of the United States Courts, *The Presentence Investigation Report* 11–15 (1978).

13. A program that functions well in this regard is described in Brown, *Community Service as a Condition of Probation, Fed. Probation*, December, 1977, at 7, in which Judge Brown describes the operation of the successful community service program administered by the U.S. District Court, Eastern District of Tennessee. The charitable work requirement is eight hours per week, and it may be decreased if special circumstances, such as the need to "moonlight" to support a family, reduce the offender's available time. *Id.* at 8.

14. The forfeiture of asserts can be viewed as restitution to the government as part of Higdon's ill-gotten gain, and restitution is a permissible probation condition as long as payment is to the victim and does not exceed the amount of the victim's loss. *United States v. Hix*, 545 F.2d 1247, 1247 (9th Cir. 1976). Although the record is not entirely clear, these requirements appear to be met in this case. The government is the victim, and the amount of the loss appears to be approximately $500,-000. If the value of Higdon's assets were in excess of the government's loss, it was up to Higdon to assert that fact.

Charitable work conditions are used to instill in a probationer a sense of social responsibility and to integrate him into a productive social

role. *See*, Bergman, *Community Service in England: An Alternative to Custodial Sentence, Fed. Probation*, March, 1975, at 43; Brown, *Community Service as a Condition of Probation, Fed. Probation*, December, 1977, at 7. They have often been employed by federal judges, *see Id.*; Jaffee, *Probation with a Flair: A Look at some Out-of-the-Ordinary Conditions, Fed. Probation*, March, 1979, at 25, and until recently had not been challenged. The first case in any jurisdiction to consider their permissibility is *United States v. Arthur*, 602 F.2d 660 (4th Cir. 1979), in which a defendant convicted of misapplication of bank funds was required as a condition of probation to accept two years of unpaid full-time employment at an approved charitable organization. The court recognized that charitable service may not always be appropriate, but upheld the condition on the ground that it was more rehabilitative than prison and functioned as a deterrent and as symbolic restitution. Because the *Arthur* court did not fully reveal its reasons for arriving at this conclusion, and because the instant case involves conditions of probation the cumulative impact of which goes far beyond that of the charitable work condition in *Arthur*, we here neither endorse nor reject the reasoning or result in *Arthur*. We note, however, that the requirement of reasonableness applied here to the cumulative impact of forfeiture and charitable work conditions should be similarly applied to a charitable work condition standing alone.

tive impact on Higdon was staggering and much harsher than necessary. The judge could have imposed a set of conditions, including some form of forfeiture and charitable work requirements, intended to restore Higdon's self-esteem, integrate him into a working environment, and inculcate in him a sense of social responsibility without driving him into penury and deceit.

## IV. THE EFFECT OF VIOLATIONS OF IMPERMISSIBLE CONDITIONS

The district court judge has broad discretion to revoke probation for violation of its conditions. *Burns v. United States*, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932); *United States v. Dane*, 570 F.2d 840 (9th Cir. 1977), *cert. denied*, 436 U.S. 959, 98 S.Ct. 3075, 57 L.Ed.2d 1124 (1978). Our inquiry, then, is limited to whether there was an abuse of discretion in Higdon's case amounting to a fundamental defect remediable by a section 2255 motion.

The government argues that Higdon's probation may be revoked for failure to meet his full charitable work requirement even if that requirement was part of an impermissible set of conditions. The contention is that Higdon's proper response to impermissible probation conditions was to seek modification of them under rule 35 of the Federal Rules of Criminal Procedure (the judge may correct an illegal sentence at any time) or the fourth paragraph of 18 U.S.C. § 3651 (1976) (the judge may modify any condition of probation). Until Higdon sought to modify the conditions, the government contends, he was bound by them.

The government's argument proves too much. It is true that self-help, and particularly deceitful self-help, is not the proper response to unreasonable probation terms. But the reasonableness of revocation on the unusual facts of this case is related to the reasonableness of the probation terms. On these facts,[15] we hold that the terms were unreasonable, and that revocation must be re-examined in that light.

The government next argues that Higdon's probation was revoked not only for failing to work the requisite number of hours, but also for filing late monthly time sheets and falsifying probation records. It contends that these reporting violations were adequate independent grounds for revocation.

We agree that a judge may revoke probation for noncompliance with reporting requirements. *United States v. Lara*, 472 F.2d 128 (9th Cir. 1972). However, the trial judge's decision to revoke probation is discretionary, not mandatory, as is the decision as to the length of the jail sentence to be served in the event of revocation. We are unwilling to speculate how the judge would have exercised his discretion in the light of our holding that the probation conditions were impermissible. The sentencing judge should be given the opportunity to consider whether Higdon's probation should be revoked solely on the basis of his noncompliance with reporting requirements which related to the performance of the impermissible conditions and, if so, whether the full five year prison term is the appropriate sentence.[16]

---

15. Although Higdon's military pension was not finally revoked until his military conviction was affirmed in 1976, it had been suspended in 1971 when he was court-martialed, and Higdon's attorney explicitly informed the trial judge that Higdon's military sentence included loss of all pension rights.

16. The full charge at the revocation hearing was as follows:
1. Probationer was delinquent in submitting his monthly supervision reports for the months of April, May, June and July, 1977, in violation of Condition No. 7 of his Probation Conditions.

2. Probationer is not in compliance with the Special Condition of his probation in that on May 4, 1977, he submitted fraudulent time sheets claiming credit for hours worked at a charitable organization that he did not work.

The first charge is clearly for noncompliance with reporting requirements. The second charge, however, is for violation of the "*Special Condition* . . . [by submitting] fraudulent time sheets claiming credit for hours . . . that he did not work" (emphasis added). The special condition referred to required Higdon to work for charity, and did not mention that he must submit timely or accurate time sheets.

We remand Higdon's section 2255 motion to the trial judge for the limited purpose of conducting a hearing into (1) whether Higdon's probation should have been revoked for noncompliance with reporting requirements; [17] and (2) whether if the revocation was proper his jail term should nevertheless be modified.[18]

REVERSED AND REMANDED.

Therefore, it appears that Higdon's failure to work the requisite hours, not his false reporting, was the gravamen of the second charge.

17. When deciding whether to revoke probation solely because of Higdon's noncompliance with reporting requirements, the judge should consider the extent to which Higdon's noncompliance was caused by the impermissible conditions. The judge might determine that Higdon was caught between Scylla and Charybdis. He was laboring under unduly harsh conditions and found himself unable to comply fully with them. If he confessed this, revocation of probation and a five-year prison term were likely. The alternative was to conceal the shortfall and hope that the probation term would expire uneventfully. Higdon chose the latter course. While we certainly do not condone his conduct, the circumstances may call for some degree of leniency on the part of the judge.

18. Higdon had approximately eight months remaining on his probation term when his probation was revoked. Technically, this time is not discharged by the time he has spent in jail. However, if the judge determines that probation should not have been revoked for mere noncompliance with reporting requirements, equitable considerations dictate that the remaining probation time be excused because of the twenty-nine months which Higdon has spent in jail.