UNITED STATES of America, Plaintiff,

v.

Edilberto "Ed" RESTOR, Jr., Defendant.

UNITED STATES of America, Plaintiff,

v.

Edwin M. WINTERMYER, Defendant.

UNITED STATES of America, Plaintiff,

v.

Joseph A. MASTRAIENI, Jr., Defendant.

Crim. Nos. 81–187 to 81–189.

United States District Court,
W. D. Pennsylvania.

Jan. 13, 1982.

David M. Curry, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Lloyd F. Engel, Jr., Lou Ann Phelps, Pittsburgh, Pa., for defendant.

## OPINION

DIAMOND, District Judge.

The defendants entered pleas of guilty to criminal contempt in violation of 18 U.S.C.

§ 401(3) (1966), and each was sentenced to the custody of the United States Attorney General for a term of imprisonment of six months and to pay a fine of $1,000. Execution of the terms of imprisonment was suspended and the defendants were placed on probation for a period of three years. In addition to the usual conditions of probation, each defendant was ordered to perform eight hours per week of court-approved community service work for fifty weeks of each year of the probation term. The defendants appealed the sentences and have moved to stay execution thereof pending the appeals. For the reasons set forth below, the motions will be denied.[1]

## BACKGROUND

The defendants were employed by the United States Government as air traffic controllers and were officers of local unions of the Professional Air Traffic Controllers Organization (PATCO). As a result of their participation in a work stoppage in August, 1981, the defendants were indicted for violating 18 U.S.C. § 1918 (1970), which prohibits employees of the Government of the United States from engaging in a strike against it. In addition, on August 4, 1981, at the outset of the strike, this court entered a temporary restraining order enjoining continuation of the work stoppage, and the defendants violated that order.

Motions by the defendants which, inter alia, challenged the legality of the indictment on the grounds that the government engaged in impermissibly selective prosecution, asserted that 18 U.S.C. § 1918 (1970) was vague and did not charge a crime, and contended that the President had granted amnesty to the defendants when he had issued them an ultimatum to return to work by August 5, 1981, or be discharged, were denied by the court, and the cases set down for trials.

In the meantime counsel advised the court that they had arrived at a plea agreement, and on November 9, 1981, the defendants appeared in court to enter pleas in accordance therewith. The proposed agreement provided that the defendants would plead guilty under 18 U.S.C. § 401(3) (1966) to a charge of contempt for the willful violation of the August 4, 1981, TRO, and would receive sentences limited solely to a fine of $500 after which the 18 U.S.C. § 1918 (1970) felony charge would be dismissed. However, that agreement was rejected by the court pursuant to Rule 11(e), Fed.R.Crim.P., and the cases were re-scheduled for trial with the understanding that the plea procedure was recessed and would be resumed if a plea bargain acceptable to the court was reached.[2]

Later in the day on November 9, 1981, counsel advised the court that they had arrived at another plea agreement and the plea hearing was reconvened the following day. At that time the parties proposed a plea bargain under which the defendants would plead guilty to contempt of court in violation of 18 U.S.C. § 401(3) (1970) and agree to the imposition of a sentence not to exceed imprisonment for six months or a fine of $1,000 or both. In return the government would recommend that the sentences not exceed a fine of $500 each and would agree to a dismissal of the felony indictments after the imposition of sentences on the contempt charges. This was accepted by the court. The defendants entered pleas accordingly, and each subsequently was sentenced as previously indicated.

## DISCUSSION

■ A district court may grant a motion to stay the execution of a fine or a probationary sentence if in the exercise of its discretion it concludes that such a stay is proper. Fed.R.Crim.P. 38. In considering the propriety of a motion to stay, the court may weigh the legal merits of the appeal. *Spinkellink v. Wainwright*, 596 F.2d 637

---

1. Although these suits have not been consolidated, since the legal and factual issues presented are the same in each case, we treat them here as one.

2. Transcript November 9–10, 1981, pp. 30, 31, 37, 38, 40, 43, 47. (Hereafter TR 11/9).

(5th Cir. 1979); *United States v. Tallant*, 407 F.Supp. 896 (N.D.Ga.1975) *aff'd*, 547 F.2d 1291 (5th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977). If a stay is denied, the court must state the reasons for the denial, Rule 9(b), F.R.A.P.; *United States v. Bishop*, 537 F.2d 1184 (4th Cir. 1976); *See United States v. Tallant, supra* at 898.

In view of the foregoing, the court requested counsel to indicate the bases of the appeals so that we could evaluate the apparent merits thereof and determine whether or not a delay in the commencement of the sentences was appropriate. In response, counsel advised the court by letter that the appeals would raise the following questions:

I. Whether the sentences imposed are illegal

A. Whether community service may be required

B. If community service may be required, within what limitations may it be imposed

II. Whether the sentences were imposed in an illegal manner

III. Whether the court abused its discretion in imposing the sentences.

Letter dated December 28, 1981, from defendants' counsel.

We believe that the sentences were legal in substance, form, and manner of imposition. The authority of the district court to place a defendant on probation is governed by 18 U.S.C. § 3651 (1981 Supp.). That statute provides that in cases such as those *sub judice* a court "when satisfied that the ends of justice and the best interests of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best." *id.* Execution of the prison sentences in the cases at bar was suspended and the defendants were placed on probation for a term within the maximum permitted by 18 U.S.C. § 3651 (1981 Supp.).

The sentences imposed by the court were within the limits of the plea agreement entered into among the parties. Indeed, we believe that the suspended sentences are more lenient than those bargained for by the defendants. Transcript of sentencing hearing held December 10, 1981, at 31 [hereinafter referred to as Sentencing Tr. 12/10]; *See United States v. Murray*, 275 U.S. 347, 357, 48 S.Ct. 146, 149, 72 L.Ed. 309 (1928). In any event, it is obvious that if the defendants believe that the suspended sentences are more onerous than incarceration, or if they are unwilling otherwise to accept the conditions of probation, they may reject probation by the simple expedient of refusing to perform the community-service condition. If that occurs, the term of incarceration to which they would be exposed could not exceed the six-month limit provided for in the plea bargain. 18 U.S.C. § 3653 (1969). As the court stated in *United States v. Smith*, 414 F.2d 630, 636 (5th Cir., 1969) *rev'd on other grounds sub nom. Schacht v. United States*, 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970), "Smith could have rejected probation and elected prison. He chose to enjoy the benefits of probation; he must also endure its restrictions."

Of course, the conditions of probation must be legally permissible. The conditions imposed here appear to be legal since (1) the imposition of community service as a condition of probation appears to be within the broad discretion vested in the court by 18 U.S.C. § 3651 (1981 Supp.) and has received appellate court approval, (2) the community service work is reasonably related to the purposes of probation as applied to the cases at bar, (3) the probation conditions are clear and specific, and (4) they do not constitute unduly harsh restrictions on the defendants' liberty.

The court has been unable to find any case in the Third Circuit dealing with the question of the legality of community service work as a condition of probation.[3]

3. Although community service was involved in the following cases in this circuit, the question

of its legality as a condition of probation was

However, several courts in other circuits have approved the concept as a proper approach to rehabilitation in appropriate situations where the probation conditions in total are reasonably related to the rehabilitation of the offender and the protection of the public. *Higdon v. United States*, 627 F.2d 893 (9th Cir. 1980); *United States v. Pastore*, 537 F.2d 675 (2nd Cir. 1976). The Fourth Circuit has commented that:

> We do not suggest that compelling charitable service is an appropriate condition of probation in every case, but we think it an acceptable one here. Certainly the rehabilitative potential of such service is greater than the rehabilitative program of most prisons. The donation of charitable services to the community is both a deterrent to other potential offenders and a symbolic form of restitution to the public for having breached the criminal laws. *United States v. Arthur*, 602 F.2d 660, 664 (4th Cir.), *cert. denied*, 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979).

*Higdon, supra,* is most instructive. There the district court placed appellant on probation and imposed two special conditions:

(1) forfeiture of all assets (including his home) to the government; and

(2) agreement to work for charity full-time for three years (6200 hours) without pay. *id.* at 896.

On appeal the Ninth Circuit held that considering the cumulative effect of the conditions they were "compelled to find that the special conditions were impermissible ... because they were not reasonably related to rehabilitation of the offender or protection of the public." *id.* at 898.

> The court went on to say, however, that: The fact that the conditions restrict Higdon's freedom is not dispositive—virtually all probation conditions are restrictive, and this circuit has often upheld as reasonable conditions which require the

abandonment or limitation of otherwise lawful activities. *id.* [citations omitted]

While the court found that the impact of the dual conditions of probation was needlessly harsh, it nevertheless stated at pages 899–900:

> Analyzed separately, the forfeiture and charitable work conditions imposed on Higdon *may each have been within the established boundaries of judicial discretion and hence permissible.* But their cumulative impact on Higdon was staggering and much harsher than necessary. The judge could have imposed a set of conditions, *including some form of forfeiture and charitable work requirements, intended to restore Higdon's self-esteem, integrate him into a working environment, and inculcate in him a sense of social responsibility without driving him into penury and deceit. id.* at 899–900 (emphasis added)

We believe that the conditions of probation imposed here meet the permissible objectives recited in *Higdon*, and we note particularly that the *Higdon* court while indicating that when imposing community service the court "must not order a work schedule which leaves inadequate time for paid employment and substantially interferes with maintenance of a normal family life," *id.* at 899, also stated:

> A program that functions well in this regard is described in Brown, *Community Service as a Condition of Probation, Fed. Probation,* December, 1977, at 7, in which Judge Brown describes the operation of the successful community service program administered by the U. S. District Court, Eastern District of Tennessee. The charitable work requirement is *eight hours per week,* and it may be decreased if special circumstances, such as the need to 'moonlight' to support a family, reduce the offender's available time. *id.* at 899 fn. 13 (emphasis added) (citation omitted)

not an issue on appeal.

*United States v. Lathrop*, 460 F.2d 761 (3rd Cir.), *cert. denied*, 409 U.S. 873, 93 S.Ct. 204, 34 L.Ed.2d 124 (1972)

*United States v. Junne*, 458 F.2d 1156 (3rd Cir. 1972)

*United States v. Lawson*, 337 F.2d 800 (3rd Cir. 1964) *cert. denied*, 380 U.S. 919, 85 S.Ct. 913, 13 L.Ed.2d 804, *reh. denied*, 380 U.S. 989, 85 S.Ct. 1349, 14 L.Ed.2d 283 (1965)

We believe that in the instant cases community service is particularly appropriate. The defendants were officers of a labor organization consisting of individuals whose job it was to assist in air traffic control to promote the safety and efficiency of air commerce. They were employees of the government and hence paid by all taxpayers. When defendants became dissatisfied with the status of the contract negotiations through which they were seeking improved working conditions and higher wages, they attempted to force the government to accede to their demands by engaging in what was patently an illegal work stoppage. Not only was the strike a violation of their oath, their contract and the civil laws, but it was also in violation of the criminal code and a direct order of this court. Defendants were attempting through illegal means to extract from their fellow citizens employment benefits including wage increases, which defendants were unable to obtain through lawful collective bargaining.

The court takes judicial notice that the strike has resulted in hardship and inconvenience to the public, increased unemployment of innocent people, and the loss of millions of dollars in the airline and related industries. The defendants' conduct was, thus, uniquely antisocial. In our judgment it was necessary, therefore, to reinstate the defendants in society, and thus to promote their rehabilitation, by requiring that they perform community service work, designed "to restore [their] self-esteem, integrate [them] in a working environment, and inculcate in [them] a sense of social responsibility . . . ." *Higdon, supra* at 900.

The fact that there may be an incidental punitive and deterrent effect in such a sentence, does not render it illegal. For while punishment may not be the *primary* purpose of probation, it may be an *incidental* one. *Higdon, supra* at 898 fn. 8. And the donation of charitable services to the community was viewed as both a proper deterrent to other potential offenders as well as a symbolic form of restitution to the public by the court in *United States v. Arthur, supra,* at 664.

We believe that the sentences are sufficiently specific and not unduly harsh. Under the plea bargain the defendants agreed to any sentence of incarceration up to a period of six months. Allowing approximately one month as "good time" allowance under a six-month sentence, the defendants would have been restrained of their liberty for 3600 hours. Even if we consider the community service work to be a restraint of liberty, the specified 1200 hours of community service work in a court-approved institution which each defendant must perform is far short of the maximum restraint of liberty for which they bargained. And it is certainly sufficiently specific to enable them to avoid unintentional revocation. *Compare, United States v. Seest,* 631 F.2d 107 (8th Cir. 1980); *United States v. Atlantic Richfield,* 465 F.2d 58 (7th Cir. 1972).

We are unable to discern any illegality in the manner in which the sentences were imposed. The pleas were taken with full regard to the mandate of Rule 11, Fed.R. Crim.P. and *United States v. Carter,* 619 F.2d 293 (3rd Cir. 1980). And the sentences were in accordance with Rule 32, Fed.R. Crim.P. The court is unaware of any other area of possible illegality in this regard.

Finally, the defendants cannot claim unfairness or surprise at the severity of the sentence. During the plea hearing, the court explained in some detail why it was rejecting the plea agreement. The court indicated that while it had not decided what an appropriate sentence would be, other than to state that it would not exceed incarceration for six months or a fine of $1,000 or both, it viewed the defendants' conduct as a serious matter, and it would not accept any plea arrangement which would limit the sentence to a fine of $500 and preclude the court from imposing incarceration if ultimately that appeared to be appropriate. The court distinguished this matter from a similar contract dispute in the private sector between employer and employee in that, inter alia, the defendants had knowingly, wilfully and intentionally violated their oaths, the clear mandate of civil and criminal laws prohibiting this type of strike, as

well as the TRO. In other words, unlike workers in the private sector who may withhold their services after their collective bargaining agreement has expired, the defendants simply had no moral, ethical, contractual, or legal right to do so.

Counsel's characterization of the defendants' conduct as the misguided peccadillo of tense and frustrated workmen seeking only to improve intolerable working conditions and to obtain fair compensation, emphatically was rejected by the court, which viewed it instead as a conspiratorial attempt to extract by unlawful force from their fellow citizens that which the defendants could not obtain through lawful and peaceful means. And the court made clear its view that we should not encourage anyone to believe that he could affect governmental policy by force in the manner attempted by these defendants. At the conclusion of the first plea hearing, neither counsel for the defendants nor the defendants themselves possibly could have been left with any misunderstanding as to the attitude of the court concerning the nature of the defendants' conduct or the possible consequences thereof.[4]

## CONCLUSION

The defendants entered into the plea bargain with their eyes open. They were concerned primarily with avoiding felony convictions under 18 U.S.C. § 1918 (1970) and, inter alia, the adverse effect that would have on their hoped-for reinstatement as air controllers. In addition, they realized from statements made by the court to defense counsel when the TRO was entered that they also faced contempt of court charges.[5] They attempted to negotiate a plea bargain by which they not only would have avoided the felony conviction, but also would have limited the total penalty of each defendant to a fine of $500. When this was rejected by the court as wholly inappropriate, they settled for what they could get rather than to go to trial and to risk what they per-

ceived to be virtually certain felony convictions[6] and the consequences thereof. That the defendants were disappointed in sentences which they received is immaterial. In our opinion those sentences were legal and at least as good as those for which the defendants bargained.

Indeed, were it not for the mitigating factors which the court recognized at the sentencing, the cost savings *and* the viable alternative to incarceration as a vehicle of rehabilitation which the court perceived in the community service condition of probation, the defendants would have been sentenced to incarceration in the first instance.

For the foregoing reasons, we are unable to find sufficient apparent merit in the defendants' appeals to justify delay in the commencement of their sentences.

ACCORDINGLY, each of the motions to stay will be denied. The terms of the probation, which commenced on December 10, 1981, will continue uninterrupted. Rule 38(a)(4) Fed.R.Crim.P.

---

**4.** TR 11/9–10 at 20–57.

**5.** TR 11/9–10 at 36, 54–55.

**6.** TR 11/9–10 at 25.