959 F.2d 242
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America Plaintiff-Appellee,
v.
Bruce F. GLASPELL Defendant-Appellant.
 No. 91-10273.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 10, 1992.*
Decided April 1, 1992.
 
 Before REINHARDT, NOONAN and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Bruce F. Glaspell appeals the revocation of his probation. We affirm.
 
 FACTS
 
 3
 On February 13, 1985, Glaspell pled guilty to three counts of wire fraud. Glaspell ran an investment scam, in which he held himself out as an extremely successful investment manager who would return clients a forty percent yearly increase on their investments. Instead, he provided his investors with bogus quarterly reports falsely stating that their investments had risen in value and converted their money to his own personal use. On the three counts to which he pled guilty, Glaspell bilked investors for a total of $1,150,000.
 
 
 4
 On October 7, 1985, Glaspell was sentenced to three years' imprisonment on Count One and ordered to pay restitution in the amount of $1,150,000. On Counts Two and Three, Glaspell was sentenced to five years' imprisonment and ordered to pay restitution in the same amount; execution of those sentences was stayed and Glaspell was placed on five years' probation to commence upon his release from custody on Count One. Restitution was also ordered as a special condition of probation. However, under the terms of a subsequent restitution agreement, Glaspell was required to pay only $100 a month toward his debt.
 
 
 5
 On February 15, 1991, the United States Probation Office filed an Order to Show Cause why Glaspell's probation should not be revoked. Glaspell was charged with (1) a failure to report income; (2) travel without permission; (3) failure to make regular restitution payments. On May 20, 1991, an evidentiary hearing was held. Glaspell was represented by counsel, presented evidence, and cross-examined witnesses. At the end of the hearing, the court found Glaspell had committed all three violations and that each of the three violations independently justified the revocation of Glaspell's probation. The court, acting under 18 U.S.C. § 3565, vacated Glaspell's probation and ordered him to serve his stayed sentence of five years' imprisonment. We have jurisdiction over Glaspell's timely appeal under 28 U.S.C. § 1291.
 
 ANALYSIS
 
 6
 The revocation of probation involves two analytically distinct inquiries. First, a court must decide "a retrospective factual question whether the probationer has violated a condition of probation". Second, a court must make "a discretionary determination" that the probationer's "violation of [that] condition warrants revocation of probation." Black v. Romano, 471 U.S. 606, 611 (1985). See also United States v. Tham, 884 F.2d 1262, 1266 (9th Cir.1989).
 
 
 7
 (1) The Violation of Probation.
 
 
 8
 There is an initial dispute about the proper standard of proof. The words describing the standard are clear; but their meaning is opaque. "The standard of proof required is that evidence and facts be such as reasonably to satisfy the judge that the probationer's conduct has not been as required by the conditions of probation." United States v. Guadarrama, 742 F.2d 487, 489 (9th Cir.1984); United States v. Garcia, 771 F.2d 1369, 1371 (9th Cir.1985). Glaspell suggests that a judge could only be "reasonably satisfied" by a preponderance of the evidence. But this issue need not be reached: there was more than a preponderance of the evidence establishing that Glaspell violated the terms of his probation.
 
 
 9
 The district court found that Glaspell had violated the terms of his probation in each of three ways. A district court's findings of fact are reviewed for clear error. United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); United States v. Silverman, 861 F.2d 571, 576-77 (9th Cir.1988). The district court found that Glaspell failed to report income as required by his probation. Glaspell's probation officer, Lynne Richards, testified that all probationers have to complete forms which show their income and debt. She further testified that the income forms signed by Glaspell stated that he had income of less than $23,000 for the period from June 1989 through May 1990.
 
 
 10
 Another government witness, Joseph Thompson, owner of Architectural Synthesis, Inc. ("ASI"), testified that ASI had contracted to pay Glaspell $5,000 a month plus expenses for Glaspell's help in raising venture capital. Thompson testified that Glaspell was paid $57,800 between November 1989 and April 1990. In what the government calls a "secret, unwritten part of the agreement", Glaspell asked that he not be paid directly by ASI. Instead, payments were made to Anton Merken, of Pacific Venture Consultants of Los Angeles. Merken passed the payments on to Glaspell. Merken and Glaspell were longtime friends, who had known each other for thirty years. Merken admitted that such an arrangement was unusual.
 
 
 11
 Glaspell claimed that he did not report the ASI payments as income on his probation forms because they were business income not personal income. He read the forms to require only a reporting of his personal income. Glaspell introduced evidence that his taxable personal income for the relevant period was actually less than he had reported on the probation forms. Glaspell also claimed that he requested payment from ASI through Merken because he "did not wish his associations with ASI to become known in the business community". He did not explain how a check mailed directly to him might possibly alert the "business community" to his relationship with ASI.
 
 
 12
 The district court also found that Glaspell failed to make his required restitution payments. As part of his original sentence, Glaspell was ordered to pay $1,150,000 in restitution. Nonetheless, under the terms of his restitution agreement, Glaspell was made to pay only $100 a month. Glaspell admitted that he had made only two such payments between June 1989 and May 1990. He claimed his nonpayment was caused by his poverty and denied that it was willful. However, the evidence strongly suggests that Glaspell was hiding his income from the Probation Department to avoid paying restitution. Glaspell was in a zero-sum contest with his victims. The more he personally made, the more they would take from him. The most reasonable inference from the evidence is that Glaspell hid his payments from ASI and structured his income to avoid paying restitution. The district court was not clearly erroneous in seeing this artful shell game for what it was.
 
 
 13
 However, it was clear error, even under the lesser "some evidence" standard of proof, to find that Glaspell travelled to Nashville, Tennessee on December 28, 1988 without the prior approval of his probation officer. The only evidence was an inference by omission from a file proved incomplete. This evidence proves nothing.
 
 
 14
 (2) The Revocation of Probation.
 
 
 15
 The decision to revoke probation is reviewed for abuse of discretion or fundamental unfairness. United States v. Tham, 884 F.2d 1262, 1264 (9th Cir.1989). A district court has broad discretion to revoke probation when its conditions have been violated. United States v. Simmons, 812 F.2d 561, 565 (9th Cir.1987). For example, "a judge may revoke probation for noncompliance with reporting requirements." Higdon v. United States, 627 F.2d 893, 900 (9th Cir.1980).
 
 
 16
 From one perspective, Glaspell's failure to report his income from ASI is a kind of falsification of probation records. See Higdon, 627 F.2d at 900. But in truth Glaspell's under-reported income is compelling circumstantial evidence of his willful evasion of restitution. The district court saw Glaspell's under-reported income and his failure to make restitution together, as different parts of the same dodge.
 
 
 17
 It is settled law that a probationer's willful refusal to pay restitution justifies the revocation of his probation:
 
 
 18
 If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection. Similarly, a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense. But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available. This lack of fault provides a 'substantial reaso[n] which justifie[s] or mitigate[s] the violation and make[s] revocation inappropriate'.
 
 
 19
 Beardon v. Georgia, 461 U.S. at 668 (citation omitted). The Beardon court also said that it was "an entirely legitimate action by the trial court" to revoke the probation of those who "had the resources to pay or had negligently or deliberately allowed them to be dissipated in a manner that resulted in [their] inability to pay". Id. at 669 n. 10. It seems very difficult to say that Glaspell made "all reasonable efforts" to pay what he owed. Glaspell was in straightened circumstances. But if he could pay a $248.06 phone bill in January 1990, why could he not pay something toward his $100 restitution payment?
 
 
 20
 Glaspell offers three rejoinders. First, he says that the "source of restitution payments from [him] should have been his personal income, just as it would be for a probationer who was not self-employed. He failed to pay restitution for eleven months because he had no personal income." But probationers who are not self-employed cannot redefine what is their income and what is not. Glaspell thought he could avoid paying restitution by giving his income a different name. By his trick of definition, Glaspell has "deliberately allowed [his resources] to be dissipated in a manner that resulted in [his] inability to pay". Beardon, 461 U.S. at 669 n. 10.
 
 
 21
 Second, Glaspell argues that if he "paid restitution with business receipts, rather than his personal income, he would have affected the viability of his business." But it is absurd to say that a business generating at least $60,000 a year in gross income will be sunk by a monthly payment of $100. Furthermore, Glaspell cannot explain his complete failure to reschedule payments or to pay something less than the $100 owed each month. In United States v. Green, probation was revoked because the probationer's "actions reflect[ed] an intent to avoid paying" back taxes he owed as a condition of his probation. 735 F.2d 1203, 1207 (9th Cir.1984). See also United States v. Irvin, 820 F.2d 110, 111 (5th Cir.1987) The district court found that same contumacious intent here.
 
 
 22
 Finally, Glaspell argues that at his sentencing hearing he paid all that he owed. But this money comes too late. His failure to pay was willful, until he thought he might get caught. By paying the balance owed, Glaspell proved only that he was no longer engaged in a "continuing bad faith" effort to avoid paying his debt; his payment did nothing to rebut his prior bad faith in evading his duty of restitution. Green, 735 F.2d at 1207.
 
 
 23
 The district court did not abuse its discretion in revoking Glaspell's probation.
 
 
 24
 (3) The Sentence Of Imprisonment.
 
 
 25
 Glaspell argues that even if his probation should have been revoked, the sentencing court failed in its duty to consider alternatives to imprisonment. But due process requires a court to consider "adequate alternative methods of punishing the defendant" only if "the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own". Beardon, 461 U.S. at 668-89 See United States v. Keith, 754 F.2d 1388, 1391 (9th Cir.), cert. denied, 474 U.S. 829 (1985) (interpreting Beardon to require "that incarceration of an offender for noncompliance with a restitution order be preceded by a determination that the offender has not made bona fide efforts to pay, or, if the offender has made such efforts, that alternative punishments will not satisfy the penological interests of the Government.") (emphasis added).
 
 
 26
 Glaspell argues that, even if due process does not impose a duty to consider alternatives to his imprisonment, the failure to do so might still be an abuse of discretion. As a possible source of the duty, Glaspell points to the recommendation in United States v. Lara that sentencing courts employ the standards promulgated by the ABA for imposing imprisonment after revocation of probation. See 472 F.2d 128, 129-30 (9th Cir.1972). See also Black, 471 U.S. at 613; III ABA Standards For Criminal Justice, Rule 18-7.3(c) at 18-508; Model Penal Code § 301.3(2).
 
 
 27
 But those same standards make clear that a "willful refusal" to pay a fine is itself grounds for imprisonment. See ABA Commentary on Rule 18-7.4 at 18-519; MPC at § 302.2(1). It stands to reason that a willful refusal to pay restitution also calls for imprisonment. In short, even the standards that Glaspell turns to for protection condemn him. By any accepted legal standard, a willful evasion of one's duty to pay restitution justifies the revocation of probation and a sentence of imprisonment.
 
 
 28
 The judgment is AFFIRMED. Judge Reinhardt concurs in the result.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3