**UNITED STATES of America,
Appellee,**

v.

**Marie FULTZ, Appellant.**

**No. 72–1687.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1973.

Decided July 25, 1973.

Wilfred J. Ritz, Director, Alderson Legal Assistance Program, School of Law, Lexington, Va., for appellant.

James E. Reeves, U. S. Atty., and J. Patrick Glynn, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before LAY and STEPHENSON, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

The matter before us involves the interpretation of the probation statutes [1] and the court rules [2] governing the grant of probation.

Appellant Fultz was charged with causing to be transported in interstate commerce a forged and counterfeited

---

* Hon. Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

1. 18 U.S.C. §§ 3651–3656.

2. Fed.Rules Cr.Proc. rule 32(a) "Sentence shall be imposed without unreasonable delay.";

(e) "After conviction of an offense not punishable by death or by life imprisonment, the defendant may be placed on probation as provided by law."

1

check in violation of 18 U.S.C. § 2314, the charge carrying a maximum penalty of ten year imprisonment and a ten thousand dollar fine. She pled guilty to the charge and, on September 2, 1969, the imposition of sentence was suspended and she was placed on probation for a period of three years. On May 18, 1971, a probation violator's warrant was issued and after hearing, at which she was represented by counsel, her probation was revoked and she was sentenced to a period of five years in the custody of the Attorney General. Subsequent thereto she filed a motion pursuant to Fed.Rules Cr.Proc. rule 35, seeking to correct her sentence on the ground that it was illegal as an increase in sentence over the three year period of probation on which she had been placed by the court. The motion was denied and this appeal followed.

Simply put, the appellant's argument is that in event the imposition of sentence upon a convicted defendant is suspended and the defendant is placed upon probation, such defendant has actually been "sentenced to probation" and thus, upon the revocation of probation, cannot be "resentenced to five years imprisonment" without violation of defendant's constitutional rights under the double jeopardy clause of the Fifth Amendment.[3]

■ The argument made is mechanistic, does violence to the beneficent purposes of probation, and is unwarranted by the statutes we are about to consider. We reject it.

The First Circuit, in Zaroogian v. United States, 367 F.2d 959 (1st Cir. 1966), put our ruling in the shortest possible compass when it held, without exegesis, that "Suspending imposition of sentence and placing on probation is clearly not a sentence," citing Bartlett v. United States, 166 F.2d 928 (10th Cir. 1948), which had held, with equal clarity, that "Imposition of sentence was suspended. The term of probation is not the term of sentence." To the same effect are United States v. Fried, 436 F.2d 784 (6th Cir. 1971), and United States v. Borelli, 333 F.Supp. 369 (D. Conn. 1971).

But out of deference to zeal of counsel in presenting the novel argument we will elaborate somewhat.[4] For many years there were no federal statutes concerning probation. During this period the district courts exercised a form of probation either by suspending sentence or by placing the defendants under State probation officers or volunteers. United States v. Murray, 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309 (1928). But in the so-called *Killitts* case (Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916)), the Supreme Court denied the right of the district courts to suspend sentence and pointed out the need for Congressional action. Some nine years later, by enacting the Probation Act of 1925,[5] (hereafter the Act) which followed extensive hearings, the courts were invested with probationary powers. Whatever authority exists in the federal courts to exercise such powers derives solely from such Act. United States v. Ellenbogen, 390 F.2d 537 (2nd Cir. 1968); United States v. Beacon Piece Dyeing & Finishing Co., 455 F.2d 216 (2nd Cir. 1972).[6]

The Act so passed carefully differentiates incarceration from rehabilitation. It contrasts the "imposition or execution of sentence" with "plac[ing] the defendant on probation for such period and upon such terms as the court deems

---

3. U.S.Const. Amend. V " . . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; . . . "

4. The literature on probation and its problems is voluminous. An excellent bibliography on the topic may be found in the American Bar Association's "Standards

Relating to Probation," approved draft 1970.

5. Now 18 U.S.C. §§ 3651–3656, note 1, *supra*.

6. See, also, the history of the Act in Roberts v. United States, 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41 (1943).

best." 18 U.S.C. § 3651. Upon revocation the court may require the defendant "to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed." 18 U.S.C. § 3653. Its purpose is clear. It was stated shortly after its passage by Chief Justice Taft in United States v. Murray, *supra*, in the following terms:

> The great desideratum was the giving to young and new violators of law a chance to reform and to escape the contaminating influence of association with hardened or veteran criminals in the beginning of the imprisonment. Experience had shown that there was a real *locus poenitentiae* between the conviction and certainty of punishment, on the one hand, and the actual imprisonment and public disgrace of incarceration and evil association, on the other. If the case was a proper one, great good could be done in stopping punishment by putting the new criminal on probation. The avoidance of imprisonment at time of sentence was therefore the period to which the advocates of a Probation Act always directed their urgency. Probation was not sought to shorten the term. Probation is the attempted saving of a man who has taken one wrong step and whom the judge thinks to be a brand who can be plucked from the burning at the time of the imposition of the sentence. The beginning of the service of the sentence in a criminal case ends the power of the court even in the same term to change it. Ex parte Lange, 18 Wall. 163, [21 L.Ed. 872]. Such a limit for probation is a natural one to achieve its end. 275 U.S. at 357, 48 S.Ct. at 149.

The emphasis throughout the entire opinion, as it has been with subsequent studies [7] has been to stress the Act's dif-

ferentiation made between "discipline with opportunity to reform" and "subjecting . . . to imprisonment." [8]

In support of the argument made, appellant seeks to make much of the fact that under the probationary order, the probationer's activities may be curtailed and thus he may suffer a degree of constraint not applicable to those unconvicted of criminal acts. But constraint alone answers nothing. An accused who is enlarged to bail normally suffers some constraint. The determination of whether constraint comes within the double jeopardy safeguards of the Fifth Amendment requires examination of the imposition, the purpose and the operation of the restrictive measures.

Obviously, the attempted saving from imprisonment of one who has taken "one wrong step" may require a degree of supervision over him. As was pointed out by Chief Justice Hughes in Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932):

> "[The probationer] is still a person convicted of an offense, and the suspension of his sentence remains within the control of the court. The continuance of that control, apparent from the terms of the statute, is essential to the accomplishment of its beneficent purpose, as otherwise probation might be more reluctantly granted, or, when granted, might be made the occasion of delays and obstruction which would bring reproach upon the administration of justice." 287 U.S. at 222, 53 S.Ct. at 156.

This control of the court has been described, again by the Supreme Court, as "a system of tutelage under the supervision and control of the court which has jurisdiction over the convicted defendant." Frad v. Kelly, 302 U.S. 312, 58 S.Ct. 188, 82 L.Ed. 282 (1937).

▮ The probation granted, coming as an act of grace to the convicted defendant and for the purposes of his re-

---

7. *e. g.*, Roberts v. United States, 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41 (1943).

8. United States v. Murray, *supra*, quoting the 1920 report of the Judiciary Committee of the House.

habilitation, may, both under the terms of the Act,[9] as well as the judicial interpretations thereof, be coupled with such conditions as the court may deem necessary and proper under the circumstances. The probationer must abide the orders of the court and "obey the terms and conditions imposed upon him." Korematsu v. United States, 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497 (1943). These terms and conditions may be mild or they may be onerous. They may range from no supervision whatever to careful surveillance, depending upon the needs of the probationer and those of society. All of this is for the better accomplishment of the purposes of the Act.

The procedure employed by Judge Meredith in this case is that authorized by 18 U.S.C. § 3653 which provides that "if imposition of sentence was suspended" (as it was here) the court upon revocation "may impose any sentence which might originally have been imposed." Trial judges were thus given discretion (1) to impose sentence before probation is awarded, or (2) to suspend imposition of sentencing until such time as probation may be revoked. If the first alternative is employed the defendant commences his term of probation knowing that a definite term of imprisonment will follow revocation. Under the second alternative, the term will await the tempering process of time, should, unfortunately, the attempt at community rehabilitation fail. Of course, with respect to either alternative the defendant remains in "a system of tutelage under the supervision and control of the court." [10] In this situation it has been well said that a probation order is, in point of fact, "an authorized mode of mild and ambulatory punishment, the probation being intended as a reforming discipline," Korematsu v. United States, supra, quoting Cooper v. United States, 91 F.2d 195 (5th Cir. 1937), and,

as such, the probationer cannot be ordered to re-serve it, subsequent to the termination of his probation, without offending double jeopardy, since, for this purpose at least "probation is a punishment tantamount to imprisonment." Oksanen v. United States, 362 F.2d 74 (8th Cir. 1966). But the argument that upon revocation of probation, however its constraints be defined, sentence of imprisonment in accordance with the provisions of the Act, cannot be imposed without offending double jeopardy, has been consistently rejected. See, e. g., Thomas v. United States, 327 F.2d 795 (10th Cir. 1964), cert. den. 377 U.S. 1000, 84 S.Ct. 1936, 12 L.Ed.2d 1051 (1964); Manley v. United States, 432 F.2d 1241 (2nd Cir. 1970).

The reason is not obscure. Probation, as the term is used in the Act, employs a unique and humanitarian treatment for the treatment of criminals. It seeks to teach a convicted criminal to live in the society and community he has offended. It is to be contrasted, as does the Act itself and its legislative history,[11] with the criminal's traditional "sentence" to prison, his removal from society and his incarceration with others who have likewise offended. Probation, then, is in no sense a sentence as that term is used in the Act.

But however the terms of probation may be defined, whether as a "sentence," or "rehabilitation," the question of double jeopardy should not, for answer, rest in the dictionary. We come now to the core of the argument presented by appellant. It is, simply put, that in event of failure of rehabilitation, with revocation of probation, the then-imposition of sentence theretofore withheld in accordance with the Act, is "double" jeopardy within the Fifth Amendment. The argument proceeds from the premise that the return of the convicted defendant to his community for help and guidance, instead of sending him to prison,

9. 18 U.S.C. § 3651: The court may ". . place the defendant on probation for such period and upon such terms and conditions as the court deems best."

10. Frad v. Kelly, supra.

11. See particularly Roberts v. United States, supra.

is itself a punishment, *ergo*, he cannot be punished twice. This we reject. The argument does violence to the plain language of the Act and the Congressional intent as consistently interpreted by the Courts.

Affirmed.