UNITED STATES of America,
Plaintiff-Appellant,

v.

WILLIAM ANDERSON COMPANY,
INC., et al., Defendants-Appellees.

Nos. 82–1734 to 82–1739, 82–1851,
82–1977 and 82–1978.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1982.

Decided Dec. 10, 1982.

Rehearing and Rehearing En Banc
Denied Feb. 4, 1983.

William F. Baxter, Asst. Atty. Gen., John J. Powers, III, George Edelstein, Attys., Dept. of Justice, Washington, D.C., Robert V. Allen, Chief, Midwest Office, Richard J. Braun, Jesse Cordova, Attys., Dept. of Justice, Chicago, Ill., for plaintiff-appellant.

Donald H. Bowman, Peterson, Bowman & Johanns, Robert B. Crosby, Donn E. Davis, Scott J. Norby of Crosby, Guenzel, Davis, Kessner & Kuester, Lincoln, Neb., for defendants-appellees.

Before HEANEY and JOHN R. GIBSON, Circuit Judges, and DUMBAULD,* Senior District Judge.

DUMBAULD, Senior District Judge.

The Government here attacks the validity of sentences imposed by Judge Urbom of the District of Nebraska upon corporate defendants in nine related antitrust prosecutions involving price fixing by bid-rigging in connection with highway construction in Nebraska.[1]

No objection is made to the sentences imposed upon individual defendants, which included a brief period of incarceration, performance of community service work, and payment of fines ranging from $5,000 to $25,000 (part or all of which fines may be

---

* The Hon. Edward Dumbauld, U.S. Senior District Judge, of the Western District of Pennsylvania, sitting by designation.

1. Mail fraud counts are included in the indictments. This is proper where an antitrust violation involves fraud and the fraud is effectuated by use of the mails. See e.g. U.S. v. Azzarelli Construction Co., 612 F.2d 292, 298 (7th Cir. 1979).

paid to the organization for which the individual defendant is performing community service work).

The objection is directed against the sentences imposed upon the corporate defendants. The corporate defendants were placed on probation upon the usual conditions and upon special conditions which included the payment of fines, in specified instalments. Then followed in each sentence a proviso that if the amount of certain instalments be paid at the specified time to a named charitable or community service organization, then a portion of the fine shall be suspended and the final instalment paid. It was provided that the defendants had no control over the expenditures of the money or over the policy of the beneficiary organizations; that no charitable tax deduction be taken; that the corporate defendants establish a written policy requiring notice to the probation officer whenever corporate officers or employees think they are being subjected to pressure to participate in collusive bidding practices; and that taxable court costs be paid promptly. In some of the cases labor and materials may be furnished as the equivalent of money payment. The beneficiaries to whom the corporate defendants are to make payments correspond with those for whom individual defendants connected with that corporate defendant are to perform community service work.

The effect of the sentences is that if a corporate defendant elects to pay part of the fine to the charitable organization for which its officers or employees are performing community service work, then the amount payable to the Government is *pro tanto* reduced by the part "suspended" upon payment to the charity.

As explained by defendants' counsel at argument, the use of corporate funds is necessary and desirable to make the community service work performed by the respective individual defendants more useful and beneficial.

In a general memorandum applicable to all the sentences, Judge Urbom made clear his intentions:

A sentence should be constructive, if possible. I have been pleased to have the imaginative assistance of defense counsel and of Gregory Lamm of Crime and Community, Inc. and Gary Mears of Nebraska Center on Sentencing Alternatives in developing ideas for causing the defendants to give back to the society they have offended more than merely an expensive idleness in prison or jail, while at the same time causing the defendants to be disrupted in their usual routines and styles of life. The alternative sentences will be designed to be firm, specific, unpleasant for the defendants and constructive for them and others. They have the additional strength of being aimed in most instances at helping directly people who are in the criminal justice population or are prime candidates for it. If the community service features of the sentences are correctly devised they will not have decreased the amount of punishment, but will have increased the usefulness and decreased the expensiveness of it.

■ Probation is entirely statutory. *U.S. v. Fultz*, 482 F.2d 1, 2 (8th Cir.1973); *Ex parte United States*, 242 U.S. 27, 52, 37 S.Ct. 72, 78, 61 L.Ed. 129 (1916). The standard of appellate review is abuse of discretion. *U.S. v. Alarik*, 439 F.2d 1349, 1351 (8th Cir.1971).

The relevant statute governing Judge Urbom's sentences is 18 U.S.C. § 3651, which in pertinent part provides:

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

\*　\*　\*　\*　\*　\*

Probation may be granted whether the offense is punishable by fine or imprisonment or both. If an offense is punishable by both fine and imprisonment, the court may impose a fine and place the defendant on probation as to imprisonment. Probation may be limited to one or more counts or indictments, but, in the absence of express limitation, shall extend to the entire sentence and judgment.

The court may revoke or modify any condition of probation, or may change the period of probation.

The period of probation, together with any extension thereof, shall not exceed five years.

While on probation and among the conditions thereof, the defendant—

May be required to pay a fine in one or several sums; and

May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had; and

May be required to provide for the support of any persons, for whose support he is legally responsible.

     *    *    *    *    *    *

The defendant's liability for any fine or other punishment imposed as to which probation is granted, shall be fully discharged by the fulfillment of the terms and conditions of probation.

It would seem that Judge Urbom's sentencing objectives are in full accord with current penological philosophy and that his carefully formulated scheme of sentences deserves the praise of being described as "creative," innovative, and imaginative just as much as that involved in *U.S. v. Mitsubishi Int. Corp.,* 677 F.2d 785, 787 (9th Cir.

1982).[2] Other instances of imposition of "behavioral sanctions" as terms of probation that have attracted comment are the sentences imposed by Judge Charles B. Renfrew of San Francisco in the "paper label" cases, where price-fixers were required to make a dozen speeches to civic groups about the evils of price-fixing, and those imposed by Judge Carl A. Muecke of Phoenix, Arizona permitting the executives of price-fixing milk companies to perform community service and their companies to donate milk to charity.[3]

The deterrent effect of punishment is heightened if it inflicts disgrace and contumely in a dramatic and spectacular manner. The arsenal of the sentencing judge should contain more than the traditional weapons of fine and imprisonment *simpliciter*. Some of the old time punishments[4] (such as the pillory, stocks, whipping post, and ducking-stool) might seem "cruel and unusual" today, but painful publicity is not relished by corporate tycoons. Public opinion can be sharply focussed on culprits engaged in antisocial anti-competitive conduct by means of "creative" sentencing. Measures are effective which have the impact of the "scarlet letter" described by Nathaniel Hawthorne, or the English equivalent of "wearing papers" in the vicinity of Westminister Hall like a sandwich-man's sign describing the culprit's transgressions. If authorized by the statute, Judge Urbom's sentences have much to be said in their favor.

Examining Judge Urbom's action in the light of the provisions of 18 U.S.C. § 3651, we note first that he did not impose fines as a *sentence* but as a *term of probation.* (This distinction is explained in *Fultz supra,*

---

**2.** We are informed by counsel that the Government approved the sentence in *Mitsubishi,* but subsequently the Solicitor General adopted a different policy.

**3.** Judge Muecke simply delayed sentencing until the defendants had had an opportunity to exercise the public service option. He then took the performance of such service into account in determining the quantum of punishment to be imposed at the time of sentencing. Judge Urbom's technique makes the election

equally voluntary on the part of defendants (they may choose to pay a conventional fine to the Treasury if they wish) but eliminates delay in disposing of the cases.

**4.** See William Andrews, *Old-Time Punishments* (London, 1890). Public penance in a white sheet in church was a punishment in Shakespeare's time. S. Schoenbaum, *William Shakespeare: A Documentary Life* (1975) 240.

482 F.2d at 2.) This is expressly authorized by the paragraph of § 3651 providing that "among the conditions" of probation "the defendant—May be required to pay a fine in one or several sums." It may then be asked whether part or all of such a fine may be "suspended." The answer is given by the paragraph of § 3651 providing that "The court may revoke or modify any condition of probation." Judge Urbom's direction that part of the fines be "suspended" upon performance of other conditions of probation is a pre-appointed revocation or modification designed to conform the terms of probation to the new fact situation created by performance of other conditions of probation.

The general terms of the first paragraph of § 3651 authorizing probation "upon such terms and conditions as the court deems best" authorize the terms and conditions specified by Judge Urbom.

The Government argues that this broad general authority is limited by the subsequent paragraph of § 3651 specifying that "among the conditions" of probation the defendant "May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had."

The Government's argument is that no payment of money to any party other than the Treasury may be required except as provided in this paragraph. It is said that this paragraph is exclusive, that the maxim *expressio unius exclusio alterius* governs.[5] We do not find this contention convincing. When specifying certain particular terms as includible "among" the conditions of prohibition, the statute simply wishes to put beyond question *per cautelam* the propriety of the particular terms specified. The meaning is the same as if the familiar corporate draftsman's locution "including but not limited to" had been used.

Developing its proposition that payment of money is restricted by the paragraph under discussion the Government then proceeds to argue that since a corporation is but a fiction existing in contemplation of law, it can do nothing but pay money, and hence can not be subjected to conditions designed to promote rehabilitative behavior. (In the case of individuals the Government concedes the propriety of requiring performance of personal service for the public benefit.)

This formalistic contention smacks of medieval antiquarianism. It resembles the argument that a corporation could not be a trustee because it had no soul and was therefore not subject to enforcement by a chancery court of obligations based upon the requirements of equity and good conscience.[6] Yet many trust companies do a thriving business today. Similarly modern law regards the corporation as a normal and usual method of doing business. Corporations today likewise claim to be good "citizens" of the community in areas where they operate. They make contributions for charitable and educational purposes in the territory served by their business, especially for the promotion of research useful in their business. Their decision-making processes, acting through human agents, affect for weal or woe the daily life of many communities. That such decision-making processes can not be affected, in the area of collusive or monopolistic pricing or other illegal restraints of trade, by rehabilitative measures and punitive sanctions is an argument divorced from reality. Insistence upon the fiction theory of corporations is today itself a fiction, and the Government's contention fails to persuade us.

With respect to the Government's other makeweight arguments (that establishment clause violations may occur, or contraventions of the judicial ethics code regarding solicitation of funds) we find such speculations even more unmeritorious. Perhaps a

---

5. For amusing comment by Judge Herbert Goodrich on the small benefit to be gained by invoking this maxim, see *Keystone Automobile Club v. Comm'r.,* 181 F.2d 402, 404–5 (3rd Cir.1950).

6. *The Collected Papers of Frederic William Maitland* (H.A.L. Fisher ed. 1911), III, 348. See also "Moral Personality and Legal Personality," *ibid.,* 304–20.

915

sufficient answer is to quote the familiar words of Blackburn, J. in *Hollins v. Fowler*, 44 Law Journal Reports (N.S.) 169, 176 (H.L.1875): "If ever such a question comes before me, I will endeavour to answer it."

Accordingly, the judgments appealed from are

AFFIRMED.