UNITED STATES of America

v.

**DANILOW PASTRY CO., INC., Dan-San Pastry Shop, Inc., d/b/a Broadway Pastry Shop, R.K. Baking Corp., Acme Cake Co., Inc., Mrs. Mac's Baking Co., Inc., Temtee Donuts, Inc., Ernst Oestreicher, Irving Sanders, Seymour Rappaport, William F. Wenzel, Robert F. McKenna, John F. McKenna, Defendants.**

**No. 82 CR. 415 (DNE).**

United States District Court,
S.D. New York.

May 3, 1983.

---

Rebecca Meiklejohn, Atty., Antitrust Div., U.S. Dept. of Justice, Washington, D.C. (William F. Baxter, Asst. Atty. Gen., Washington, D.C., of counsel), for plaintiff.

Charles Stillman, Stillman, Friedman & Shaw, P.C., New York City, of counsel, for defendants Danilow Pastry Co., Inc. and Ernst Ostreicher.

Frank Wright and Gregg Young, Grand & Ostrow, New York City, of counsel, for defendants Dansan Pastry Shop, Inc. and Irving Sanders.

Richard Cooper, Austrian, Lance & Stewart, New York City, of counsel, for defendant Temtee Donuts, Inc.

Seymour Waldman, Vladeck, Waldman, Elias & Engelhard, P.C., New York City, of counsel, for defendant R.K. Baking Corp.

James Druker, Kase & Druker, New York City, of counsel, for defendant Seymour Rappaport.

John Sheehy, Rogers & Wells, New York City, of counsel, for defendants Acme Cake Co., Inc. and William Wenzel.

Frank Careri Jr., Nolan, Bell & Moore, Newark, N.J., of counsel, for defendants John F. McKenna and Mrs. Mac's Baking Co. Inc.

John Mulvihill, Nolan, Bell & Moore, Newark, N.J., of counsel, for defendant Robert F. McKenna.

## MEMORANDUM OPINION AND ORDER

EDELSTEIN, District Judge:

The issue at bar is the propriety of sentences imposed by this court on January 31, 1983 against six corporations engaged in baking pastry for wholesale distribution, which were sentenced together with six individual defendants. The court ordered each of the corporations to pay a fine and to donate a certain amount of fresh baked goods to needy organizations that were to be specified by the court.

The government contends that the sentences were improper. The government argues that the only authorization for the court to impose such an order is the Probation Act, 18 U.S.C. § 3651, and that under the Probation Act the court should have ordered the donation as a condition of probation. The government further contends that under the Probation Act such a donation is "restitution," specifically provided for by the Act, and as such it can benefit only aggrieved parties and only in the amount of their actual damages.

### FACTUAL BACKGROUND

The defendants are six major wholesale bakeries in the New York metropolitan area and six individuals who were or are principals of those bakeries.[1] Total sales by the

---

1. In a Bill of Particulars filed July 13, 1982, the government amplified its description of the defendants stating that: "The phrase 'major wholesale bakeries in the New York metropolitan area,' . . . means that the defendant corporations were the primary suppliers of pastry to the group of customers and in the geographic area identified in the indictment." Bill of Particulars at ¶ 2.

defendant corporations from 1977 through 1980 were in excess of $100 million. The indictment, filed June 4, 1982, charges that:

> From at least as early as the mid-1960s and continuing until at least March 1981 ... the defendants and co-conspirators have engaged in a continuing combination and conspiracy in unreasonable restraint of the aforesaid interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.
>
> The aforesaid combination and conspiracy has consisted of a continuing agreement, understanding and concert of action among the defendants and co-conspirators, the substantial term of which was to raise and fix prices of pastry.

In September 1982 the defendants moved this court for an order granting them leave to change their pleas from not guilty to *nolo contendere.* The defendants argued that the corporate defendants were financially ailing and that they could not afford the expense of defending a six week criminal trial.[2] Perhaps of greater significance, the defendants sought to deny private plaintiffs the advantages of using a guilty plea or conviction as *prima facie* evidence in a subsequent private antitrust action, and of going to court with the evidence and data presented by the government at trial. 15 U.S.C. § 16. A *nolo contendere* plea would accomplish these goals for the defendants.

The government opposed these motions asserting that the acceptance of *nolo* pleas would: (1) diminish the punitive and deterrent impact of prosecution because it would minimize the publicity, which usually surrounds a trial, and because it might allow the defendants to claim that only a technical violation had occurred; (2) lend credence to the view that white-collar offenders are treated more leniently than other offenders; and (3) not provide to private plaintiffs the aforementioned benefits of a guilty plea, trial or conviction.[3]

Both sides agreed that tremendous savings would result from permitting *nolo* pleas from all the defendants and that this might avoid forcing the corporate defendants out of business. The court conditioned consideration of the defendants' application to plead *nolo* on the defendants settling with private plaintiffs who had sued them in ten class actions in the Eastern District of New York.[4] The court mediated the settlement discussions of the private actions until a settlement was achieved.[5]

The court then sought to defuse the possibility that a defendant would use the *nolo* pleas to claim that their violation was merely technical. Thus, the court required each defendant to submit for the government's approval a narrative statement of his (or its) role in the conspiracy. Each defendant submitted such a statement, the government approved the accuracy and meaningfulness of each, and each became a part of the public record of the case. In addition, each individual defendant, and in the case of a corporation its representative, was required to state, in open court, the nature of his (or its) complicity in the conspiracy. Having taken these steps, and after questioning each defendant to ensure the voluntariness of the pleas, the court accepted *nolo* pleas from all defendants.

The government submitted a sentencing memorandum recommending a specified fine for each corporate defendant and, for each individual defendant, a specified jail term and probation.[6] The government, as

---

2. *See* e.g., Affidavit in Support of Motion for Change of Plea to Indictment sworn to September 1, 1982 by Seymour Waldman.

3. *See* Memorandum of the United States in Opposition to Motion of Defendant R.K. Baking Corp. to Change Its Plea to Nolo Contendere, at 4–7.

4. Ten cases were filed on June 8, 1983 in the Eastern District of New York and were consolidated there before Judge Mishler, CV 82–1962.

5. This court agreed to accept transfer of the Eastern District cases, and they are now consolidated before this court for supervision of the settlement, 83 Civ. 714.

6. *Specifically, the government recommended an eighteen month jail term, execution suspended beyond a specified term for each defendant and the defendant placed on probation for the remainder of the eighteen months.*

it had in opposing the defendants' application to change their pleas from not guilty to *nolo contendere,* emphasized the need for general deterrence. After carefully considering the parties contentions, and all the circumstances in this case, the court imposed fines, suspended execution of jail terms, placed the defendants on probation, and ordered five of the six individuals to perform community service as a condition of probation. No objection has been made to the sentences imposed on the individual defendants.[7]

In sentencing the corporate defendants the court similarly imposed fines and ordered the defendants to perform community service.[8] The community service imposed on each of the corporate defendants was to donate a specified amount of their pastry products to needy organizations, the organizations to be designated in a subsequent order.

## DISCUSSION

### A. *Procedural Challenge under § 3651*

By letter dated February 10, 1983 over the signature of Rebecca Meiklejohn, Attorney in the Antitrust Division of the Department of Justice (the "February 10 Letter"), the government challenges the sentences imposed on the corporate defendants.

The first of the government's challenges to this sentence is procedural. It requests the court to correct, pursuant to Fed.R. Crim.P. 35, a sentence imposed in an illegal manner. The government argues that this court's only authority to make such a donation order lies in the Probation Act, 18 U.S.C. § 3651,[9] which requires that the de-

---

7. The sentences imposed on the individual defendants were as follows:

Ernst Oestreicher—$1,000 fine and two years of probation with 500 hours of community service per year

Irving Sanders—$1,000 fine and two years of probation with 300 hours of community service per year

Seymour Rappaport—$35,000 fine and two years of probation with 250 hours of community service per year

William Wenzel—$1,000 fine and two years of probation with 400 hours of community service per year

Robert F. McKenna—$2,000 fine

John F. McKenna—$1,000 fine and two years of probation with 200 hours of community service per year

8. The sentence on the defendant Danilow Pastry Co., Inc. read as follows:

IT IS ADJUDGED that the Danilow Pastry Co., Inc. is hereby fined the sum of $100,000 to be paid to the United States Treasury, as directed by the Probation Department in cooperation with the Government in scheduling the payments.

IT IS FURTHER ADJUDGED that the Danilow Pastry Co., Inc., is hereby ordered to make restitution in the following manner: you are to arrange for the delivery of $1,200 of your fresh baked goods each week, for 12 months, to organizations that will be designated by an order of this court. In calculating the $1,200 of baked goods, you are to use your wholesale prices. The selection of the goods is to be made by the organizations so designated in the order of this court.

The sentences imposed on the other corporate defendants incorporated the same language and were as follows:

Dan-San Pastry Shop—$10,000 fine and $200 baked goods per week;

R.K. Baking Corp.—$10,000 fine and $200 baked goods per week;

Acme Cake Co., Inc.—$50,000 fine and $1,200 baked goods per week;

Mrs. Mac's Baking Co., Inc.—$10,000 fine and $200 baked goods per week;

Temtee Donuts, Inc.—$40,000 fine and $350 baked goods per week.

9. The Probation Act provides, in pertinent part:

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best....

While on probation and among the conditions thereof, the defendant—

May be required to pay a fine in one or several sums; and

May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had; and

May be required to provide for the support of any persons, for whose support he is legally responsible....

18 U.S.C. § 3651.

fendant be placed on probation and the donation ordered as a condition of probation.[10]

 This court ordered the delivery of baked goods under its common law discretionary power with respect to sentencing.[11] This court, however, agrees with the government that the sentences should be based upon the statutory authority of 18 U.S.C. § 3651. Hence the first aspect of the government's application is granted and, pursuant to the Fed.R.Crim.P. 35(a)[12] this court hereby orders the sentences imposed on the six corporate defendants be corrected to read as follows:

IT IS ADJUDGED that Danilow Pastry Co., Inc. is hereby fined the sum of $162,-400 to be paid to the United States Treasury, as directed by the Probation Department in cooperation with the Government in scheduling the payments. The execution of said fine in excess of $100,-000 is hereby suspended and the defendant is placed on probation on the condition that it arrange for the delivery of $1,200 of its fresh baked goods each week, for 12 months, to organizations that will be designated in this order. In calculating the $1,200 of baked goods, the wholesale prices are to be used. The selection of the goods is to be made by the organizations so designated.

IT IS ADJUDGED that Dan-San Pastry Shop is hereby fined the sum of $20,400 to be paid to the United States Treasury, as directed by the Probation Department in cooperation with the Government in scheduling the payments. The execution of said fine in excess of $10,000 is hereby suspended and the defendant is placed on probation on the condition that it arrange for the delivery of $200 of its fresh baked goods each week, for 12 months, to organizations that will be designated in this order. In calculating the $200 of baked goods, the wholesale prices are to be used. The selection of the goods is to be made by the organizations so designated.

IT IS ADJUDGED that R.K. Baking Corp. is hereby fined the sum of $20,400 to be paid to the United States Treasury,

---

**10.** The defendants pleaded *nolo contendere* to a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, which provides that violators "shall be punished by fine ... or by imprisonment ... or by both said punishments, in the discretion of the court." The only other statutory authority for the court to order punishment for a Sherman Act violation is the Probation Act, 18 U.S.C. § 3651.

**11.** When the Supreme Court first addressed federal courts' power to suspend execution of a sentence and held that the power, which the courts had previously exercised, was not among the common law sentencing powers of the courts, it clearly stated that its decision did not eliminate all court discretion,

Indisputably under our constitutional system the right to try offences against the criminal laws and upon conviction to impose the punishment provided by law is judicial, and it is equally to be conceded that in exerting the powers vested in them on such subject, courts inherently possess ample right to exercise reasonable, that is, judicial, discretion to enable them to wisely exert their authority.

*Ex Parte United States,* 242 U.S. 27, 41–42, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916).

Furthermore, decisions which hold that part of the court's sentencing power is derived solely from the Probation Act, refer only to the power to suspend imposition or execution of sentence. These decisions do not limit the inherent discretion to impose sentences similar to imprisonment or fines, but tailored to meet the circumstances of a particular case. *See e.g., Roberts v. United States,* 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41 (1943); *Fiore v. United States,* 696 F.2d 205 (2d Cir.1982).

The legislative history of the Probation Act indicates that the main purpose of the act was not to give the courts discretion in imposing sentences, that was largely taken for granted, but to give courts the power to suspend overly harsh sentences, which might otherwise be mandated by a criminal statute. H.R. No. 1377, 68th Cong., 2d Sess. (1925).

**12.** The court may increase the severity of a defendant's sentence before the defendant begins to serve his sentence. *See United States v. DiFrancesco,* 449 U.S. 117, 134, 101 S.Ct. 426, 435, 66 L.Ed.2d 328 (1980), which implied that an increase might be possible in some situations after a defendant begins serving his sentence. Furthermore, in this case the court is not increasing the severity of the sentence, but merely altering its manner of imposition and reimposing its original intent, a course particularly favored. *United States v. DiLorenzo,* 429 F.2d 216, 221 (2d Cir.1970), *cert. denied* 402 U.S. 950, 91 S.Ct. 1609, 29 L.Ed.2d 120 (1971).

as directed by the Probation Department in cooperation with the Government in scheduling the payments. The execution of said fine in excess of $10,000 is hereby suspended and the defendant is placed on probation on the condition that it arrange for the delivery of $200 of its fresh baked goods each week, for 12 months, to organizations that will be designated in this order. In calculating the $200 of baked goods, the wholesale prices are to be used. The selection of the goods is to be made by the organizations so designated.

IT IS ADJUDGED that Acme Cake Co. is hereby fined the sum of $112,400 to be paid to the United States Treasury, as directed by the Probation Department in cooperation with the Government in scheduling the payments. The execution of said fine in excess of $50,000 is hereby suspended and the defendant is placed on probation on the condition that it arrange for the delivery of $1,200 of its fresh baked goods each week, for 12 months, to organizations that will be designated in this order. In calculating the $1,200 of baked goods, the wholesale prices are to be used. The selection of the goods is to be made by the organizations so designated.

IT IS ADJUDGED that Mrs. Mac's Baking Co. is hereby fined the sum of $20,400 to be paid to the United States Treasury, as directed by the Probation Department in cooperation with the Government in scheduling the payments. The execution of said fine in excess of $10,000 is hereby suspended and the defendant is placed on probation on the condition that it arrange for the delivery of $200 of its fresh baked goods each week, for 12 months, to organizations that will be designated in this order. In calculating the $200 of baked goods, the wholesale prices are to be used. The selection of the goods is to be made by the organizations so designated.

IT IS ADJUDGED that Temptee Donuts, Inc. is hereby fined the sum of $58,200 to be paid to the United States Treasury, as directed by the Probation Department in cooperation with the Government in scheduling the payments. The execution of said fine in excess of $40,000 is hereby suspended and the defendant is placed on probation on the condition that it arrange for the delivery of $350 of its fresh baked goods each week, for 12 months, to organizations that will be designated in this order. In calculating the $350 of baked goods, the wholesale prices are to be used. The selection of the goods is to be made by the organizations so designated.

WHEREAS each of the following organizations has been found by this court to serve the needy in the defendant's market area, and the court has determined that each of the following organizations has a need for the defendants' goods in at least the amounts designated herein,

IT IS HEREBY ORDERED that the probation department, in conjunction with the corporate defendants and the organizations designated herein, arrange for the defendants to supply fresh baked goods to the following organizations in the following amounts for distribution so far as practicable in the defendants' market area:

Catholic Charities of the Archdiocese of New York: $600 per week;

Citymeals-on-Wheels of the New York City Department for Aging: $400 per week;

Manhattan Youth Residence Center and Pleasantville Cottage School of the Jewish Child Care Association of the United Jewish Appeal—Federation of Jewish Philanthropies: $600 per week to be divided equally between the two organizations;

Community Food Bank, Inc. of Newark N.J.: $100 per week;

Coalition for the Homeless at 105 East 22 St., New York, N.Y.: $250 per week;

Salvation Army, Emergency Disaster Office at 155 South Eliott Place, Brooklyn, N.Y.: $600 per week;

Federation of Protestant Welfare Agencies, East Harlem Welfare Center at 2050 Second Ave and West Side Churches Service Alliance: $600 per week to be divided equally between the two organizations;

New York Philanthropic League, 1 East 104th Street, New York, N.Y.: $200 per week.

### B. *Substantive Challenge under § 3651*

The government's next challenge is that 18 U.S.C. § 3651 does not empower the court to order that the donations be given to the designated organizations if they are not "aggrieved parties" within the meaning of the Probation Act. The sentences as corrected, however, are fully consistent with the purpose of the Probation Act. Furthermore, the donation order, when imposed as a condition of probation complies with the judicial standard generally applied in construing such conditions.

Until 1916 a sentencing court's power to suspend the execution of a sentence was governed by a common law power. In *Ex Parte United States, supra,* the Court held that this power did not exist. By 1925 when the first federal probation statute was enacted, every state had such a statute to give judges discretion to suspend overly harsh sentences in the interests of justice, to achieve maximum deterrence and to achieve maximum rehabilitation. *United States v. Fultz,* 482 F.2d 1, 2–3 (8th Cir. 1973). The House Report on the Probation Act indicates that Congress sought to give federal judges the same sentencing discretion that state court judges had in order to achieve similar goals. H.R. No. 1377, 68th Cong., 2d Sess. (1925). The sentences imposed in this case attempt to balance these goals.

■ The standard for evaluating whether conditions of probation meet the purposes of the Probation Act allows reversal only for an "abuse of discretion" because the "sentencing court's discretion to set conditions of probations is broad." *Fiore v. United States, supra,* 696 F.2d at 207. *See also, United States v. Pastore,* 537 F.2d 675, 681 (2d Cir.1976); *United States v. Alarik,* 439 F.2d 1349, 1351 (8th Cir.1971). The prerequisite for the condition is that it "must bear 'a reasonable relationship to the treatment of the accused and the protection of the public.'" *Fiore v. United States, supra,* 696 F.2d at 208, *quoting, United States v. Pastore, supra,* 537 F.2d at 681; *Porth v. Templar,* 453 F.2d 330, 333 (10th Cir.1971). As discussed below, the sentences herein are related to reforming those in power in this industry, deterring future price fixing and protecting the public.

The punishment of corporate defendants frequently requires courts to adopt "unique and creative" sentences. *United States v. Mitsubishi Int'l Corp.,* 677 F.2d 785, 788 (9th Cir.1982) (upholding sentence requiring corporations to loan executives for one year to a community organization and to make a contribution of $10,000 for each violation to said organization). This is such a case.

■ In formulating its sentences, the court sought punishment that would compensate for the reduced deterrent effect of the *nolo* pleas.[13] After reviewing the extensive financial data submitted by the parties, the court determined that fines substantial enough to achieve the appropriate measure of deterrence would bankrupt the corporate defendants. Such a sentence would cause widespread unemployment among the bakeries' employees,[14] damage

---

**13.** Because of this need for deterrence, the court rejects the proposal in response to the February 10 Letter to eliminate the community service order entirely. *See* Letter of Charles Stillman, dated March 14, 1983 on behalf of Defendants Danilow Pastry, Inc., Ernst Ostreicher, Dan-San Pastry Shop, Irving Sanders, Acme Cake Co., Inc., and William Wenzel and Letter of Richard Cooper, dated March 16, 1983 on behalf of Defendant Temtee Donuts.

**14.** *See e.g.,* Exhibit B of the Sentencing Memorandum on Behalf of Ernst Ostreicher and the Danilow Pastry Co., Inc. including: letter of Michael Sandroff, Secretary-Treasurer of the

Bakers' Union Local 3, dated October 19, 1982 (estimating that 500 Bakers' Union members would lose their jobs if the defendants were forced out of business, and that because of the members' lack of general skills they would be unlikely to find other employment); letter of Murray Gorgo, Business Agent of the Paper Box Makers' Union Local 299, dated October 20, 1982 (stating that Danilow Pastry Co., Inc. alone employs twenty-two of the Union's members, who are mostly unskilled, minority workers and who would be unlikely to find other employment if laid off); and letter of Stanley Berman, Collective Bargaining Representative

the economies of the communities in which the plants are located, and ironically, diminish competition. Hence, this is precisely the overly harsh sentence that the Probation Act was designed to avoid.

The sentences have avoided this harsh result, and at the same time have increased the deterrent effect beyond that which would have been provided by fines. These sentences help compensate for the reduced deterrence inherent in the acceptance of the *nolo* pleas. In addition, criminological literature has shown that symbolic restitution that reaffirms the community's standards is an important element of general criminal deterrence.[15] Finally, deterrence is fostered by the publicity garnered by the sentences.

Rehabilitation and specific deterrence against future price fixing by the six corporations is also enhanced in that the executives and workers of these companies will be made aware, on a continuous basis throughout the next twelve months, of the violations perpetrated by their company, of the need for restitution, and of the need to guard against similar violations in the future.[16] *See* Fisse, *Community Service As A Sanction Against Corporations,* 1981 Wis.L. Rev. 970, 977 (1981).

With these considerations in mind, the court ordered each of the corporate defendants to pay all, or in one case a substantial part, of the fine recommended by the government and additionally ordered each to deliver a certain amount of fresh baked goods to needy organizations.[17] The sentences require the corporations to perform community service by providing their products at no charge to needy members of the community. In this way the wrongdoings of these defendants are called to public attention, the public is made aware of the community service and symbolic restitution that these violators will make, punishment is increased beyond what fines could extract and yet the needs of the innocent employees, the customers, and the communities are secured.

After determining that community service was the best way to promote these goals, the court then had to determine who would be the beneficiaries of this community service. The court was aware that compensation for many of the defendants' customers had already been arranged through the settlement reached in the private actions. The court selected, as beneficiaries, organizations that serve the public in order to further the public awareness and rehabilitative nature of the punishment and to provide symbolic restitution to the community.[18] In conclusion, the community ser-

---

of the Bakery Drivers' Local 802, dated October 22, 1982 (stating that eighty-one of the Union's members are employed by the defendants and that they would be hard-pressed to find employment elsewhere if laid off, and that they would lose substantial parts of their pensions, which are accrued but still unpaid).

**15.** *United States v. William Anderson Co.,* 698 F.2d 911, 913 (8th Cir.1982); Emil Durkheim, *The Division of Labor in Society.* Simpson trans. (1933), pp. 108–9; Gahringer, *Punishment and Responsibility,* 66 J. Philos. 291, 291–93 (1969).

**16.** Sentences that alert corporate decision-makers to the dangers of violations of the criminal law, aid in deterring corporate officials, and thereby their corporations, from further violations. *United States v. William Anderson Co., supra,* 698 F.2d at 913–14; *See* Note, *Structural Crime and Institutional Rehabilitation: A New Approach to Corporate Sentencing,* 89 Yale L.J. 353, 370–71 (1979).

**17.** In another price fixing case, *United States v. Borden,* 74 Crim. 0319, District of Arizona, Judge Carl Muecke effected a similar donation of the defendants' products to charitable organizations. He delayed sentencing until the defendants could make the donations and then considered that community service in imposing sentences on them. *United States v. William Anderson Co., supra,* 698 F.2d at 913. Although different in form, the *Borden* sentence is substantially the same as that imposed herein.

**18.** It is important to note that the direct buyers of the defendants' products are not economically those most seriously injured by the defendants' pricefixing. When all the manufacturers in a market collude, as was the case here, *see* Government Memorandum in Opposition to Motion to Change Plea to *Nolo Contendere* at 2, their buyers who are middlemen, pass on the monopoly prices to the ultimate consumers. They are able to do this because there is no source for cheaper goods to compete with

vice order was not an abuse of discretion under the Probation Act.

■ Other than the general standard that probation conditions must satisfy, probation may not be used to exceed the maximum penalty under the law. *Fiore v. United States, supra,* 696 F.2d at 209. The maximum penalty that a court may impose under the Sherman Act on a corporate defendant is $1 million. By any valuation of the requirements of community service imposed upon these corporations, none even approaches that amount.

The government challenges the sentences on the ground that under § 3651 the court's power to impose restitution as an element of a sentence is limited in that such restitution must be to parties injured by the defendants' illegal conduct and to the actual damages caused by the defendants' illegal conduct. Thus, in the present case, the government asserts that the distribution of baked goods must be confined to organizations that were "injured" by the defendants' price fixing activities.[19] February 10 Letter, at 4. Moreover, the government contends that such restitution may not exceed the actual damages sustained by each organization as a result of the defendants' price fixing activities. February 10 Letter, at 4–5.

In support of these contentions, the government relies on the decisions in *United States v. The Prescon Corp.,* 695 F.2d 1236 (10th Cir.1982) and *United States v. Clovis Retail Liquor Dealers Trade Ass'n,* 540 F.2d 1389 (10th Cir.1976). The government also acknowledges that the Eighth Circuit recently rejected these arguments by the government in *United States v. William Anderson Co., supra.*

In *United States v. The Prescon Corp.,* The Prescon Corp. ("Prescon") and VSL Corp. ("VSL") pleaded *nolo contendere* to an indictment charging them with rigging construction contract bids in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Prescon and VSL were sentenced to probation and fined, respectively, the sums of $252,000 and $302,000. The sentencing court suspended execution of the fines on the condition that each defendant deposit, respectively, the sums of $150,000 and $175,000 into the Registry of the Court to be distributed to community agencies designated by the Chief Probation Officer subject to the approval of the court. The court stated that "I hope that this money will be used for programs ... to fight crime." *United States v. The Prescon Corp., supra,* 695 F.2d at 1238. The government appealed the sentencing order contending that § 3651 does not authorize a judge to sentence a corporation with an alternative to payment of a fine, if that alternative involves a probation condition requiring a contribution to a person or group not aggrieved by the defendant's crime.

Similarly, in *United States v. Clovis Retail Liquor Dealers Trade Ass'n,* fifteen defendants pleaded *nolo contendere* to an indictment charging them with a violation of the Sherman Act in connection with the retail prices of liquor. The court imposed the maximum fine of $50,000 on each defendant and the individual defendants were sentenced to one year in jail. Subsequently, the sentences of three individual defendants were reduced to six months imprisonment; the execution of the remainder of their sentence were suspended and they were placed on probation for five years conditioned on the payment by each of specified sums to the Curry-Roosevelt County

them. The direct customers of the pricefixers, the middlemen, lose only the profits on the marginal decrease in demand due to the artificially high price. P. Areeda, *Antitrust Analysis,* at 77 (1981); *see Hanover Shoe Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 492–93, 88 S.Ct. 2224, 2231, 20 L.Ed.2d 1231 (1968) (accepting the economic "passing on" analysis, but rejecting "passing on" as a defense to monopolistic prices). Thus, the ulti-

mate consumers and the members of the community are the true aggrieved parties here.

**19.** The government does not indicate in the February 10 Letter exactly what beneficiaries would qualify as "injured" parties, but it implied at the sentencing hearing that organizations that serve the needy public in the defendants' market area would not. *See* Transcript of hearing, Jan. 31, 1983 at 53.

Council on Alcoholism, Inc. The rest of the defendants were put on probation for five years conditioned on the payment of specified sums to the Curry-Roosevelt County Council on Alcoholism, Inc. The total amount to be paid by the defendants to the Council on Alcoholism was $233,500. The defendants appealed that portion of their sentences requiring them to make payments to the Council on Alcoholism.

In both *Prescon* and *Clovis Retail Liquor Dealers Trade Ass'n,* the Tenth Circuit invalidated the sentencing orders on the ground that the sentences provided for restitution and that under § 3651 restitution is limited to "aggrieved parties." However, as the court stated in *Prescon:* "We do not suggest that listing of the four specific conditions of probation [in § 3651] 'closes the door' to other conditions." *Supra,* 695 F.2d at 1242. *See also, United States v. Tonry,* 605 F.2d 144, 147 (5th Cir.1979); *United States v. Pastore, supra,* 537 F.2d at 681.

■ Courts have broad discretion under § 3651 to impose probation as long as the conditions bear " 'a reasonable relationship to the treatment of the accused and the protection of the public.' " *United States v. Pastore, supra,* 537 F.2d at 680, *quoting, Porth v. Templar, supra,* 453 F.2d at 333. Additionally, as the court in *United States v. Pastore* stated in discussing the language of § 3651: "[i]t would be hard to use more general words than 'upon such terms and conditions as the court deems best.' " *Id.*

■ As discussed previously, in the present case the sentences are designed primarily to require the defendants to perform community service. In *United States v. Restor,* the court stated that community service is a proper condition of probation "so long as it is reasonably related to rehabilitation of the probationer, ... deterrence of future misconduct by the probationer general deterrence of others, [or] deserved punishment."

679 F.2d 338, 340 (3d Cir.1982), *quoting, United States v. Tonry, supra,* 605 F.2d at 148. The community service aspects of the sentences in this case comport with the *United States v. Tonry* standard. The community services were carefully drawn to provide maximum rehabilitative and deterrent effect without bankrupting the defendant corporations. *See Higdon v. United States,* 627 F.2d 893, 899 (9th Cir.1980).

To the extent that the subject sentences provide restitution, such restitution is in the nature of "symbolic restitution" designed primarily to deter future misconduct on the part of the defendants rather than to provide compensation to their victims. *See United States v. Arthur,* 602 F.2d 660, 664 (4th Cir.1979), *cert. denied,* 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979). Accordingly, the sentences are not limited by the requirements that any restitution be only to "aggrieved parties." [20]

Both *Prescon* and *Clovis Retail Liquor Dealers Trade Ass'n* involved challenges to

---

**20.** The sentences may be valid even assuming *arguendo* that the instant sentence is limited by the § 3651 requirement that restitution be made only to "aggrieved parties." Under § 3651, the sentencing court has broad discretion to fashion sentences that meet the needs of the defendant and the community as well. *United States v. Arthur, supra,* 602 F.2d at 664; *United States v. Pastore, supra,* 537 F.2d at 681–82. The government has conceded that the class of "aggrieved parties" in the present case may, because of the pervasive and long-term nature of the illegal conduct involved, be incapable of being identified. February 10 Letter, at 4. In addition, the defendants have indicated that complete customer lists are not available. *See* Letter of Charles Stillman dated March 14, 1983 at 3–4.

Consumers in the New York metropolitán area have suffered by virtue of the defendants'

conduct. In this sense, they are "aggrieved parties." The court can find no authority for the proposition that § 3651 requires that *all* "aggrieved parties" have to be included within an order of restitution. *Cf. United States v. Roberts,* 619 F.2d 1, 2 (7th Cir.1979). Under these circumstances where a symbolic restitution is at most an ancillary benefit of a probation condition that primarily involves an order mandating community service, the condition then is at most marginally restricted by the restitution limitation of § 3651. Since the beneficiaries here were actually injured in indeterminable amounts over long periods, they would appear, under the circumstances, to be legally permissible beneficiaries. *See* n. 18, *supra.*

In evaluating the choice of the beneficiaries and the reasonableness of the probation condition involved here as compared to the one involved in other cases, like *Clovis Retail Liquor*

conditions of direct monetary payments. A money payment is the sort of restitution to aggrieved parties that is envisioned by the restitution section of the Probation Act and is limited by that section. Here the court has ordered a community service condition. Furthermore, the condition is intended not only to make restitution, but equally to aid in deterrence and in the reformation of the principals in this industry. Hence this court's sentence does not fall under the *Clovis Retail Liquor Dealers Trade Ass'n* or the *Prescon* holding. Accordingly, the court concludes that the case law relied upon by the government in support of its contention that a sentencing court cannot impose a community work program that provides services to a portion of the general public is inapposite.

Although not referred to by the government, the court also notes that in a recent decision by the Second Circuit the court stated that under § 3651 "the defendant may not be required to pay reparations to persons not aggrieved by his crimes, or simply to the community at large." *Fiore v. United States, supra,* 696 F.2d at 209, *citing, Clovis Retail Liquor Dealers Trade Ass'n. Fiore v. United States,* like the cases cited by the government, involved a monetary payment condition, an express condition of direct restitution, which is not present here.[21]

The court finds strong support for its sentence in the decision by the Eighth Circuit in *United States v. William Anderson*

*Co., supra.* In that case corporate defendants were sentenced to pay fines and placed on probation for price fixing. Officers and employees of the corporate defendants were sentenced to serve a period of brief incarceration and to perform community service work for charitable organizations. The court provided that the fines payable to the government would be reduced by amounts paid by the corporate defendants to the charitable organizations where its employees and officers were working. There, despite the fact that the "donation" resulted in a reduction in the amount of the fine payable to the government, the court of appeals upheld the sentence stating that:

It would seem that Judge Urbom's sentencing objectives are in full accord with current penological philosophy and that his carefully formulated scheme of sentences deserves the praise of being described as "creative," innovative, and imaginative just as much as that involved in *U.S. v. Mitsubishi Int. Corp.,* 677 F.2d 785, 787 (9th Cir.1982). Other instances of imposition of "behavioral sanctions" as terms of probation that have attracted comment are the sentences imposed by Judge Charles B. Renfrew of San Francisco in the "paper label" cases, where price-fixers were required to make a dozen speeches to civic groups about the evils of price-fixing, and those imposed by Judge Carl A. Muecke of Phoenix, Arizona permitting the executives of price-fixing milk companies to perform communi-

---

*Dealers Trade Ass'n,* the court considers one other factor relevant. Here the lawless conduct of the defendants raised the price of a food product and consequently restricted its availability. The community service order of this court serves to make that food product more available to those who are most in need. The *Clovis Retail Liquor Dealers Trade Ass'n* defendants pled *nolo* to the same offense in the liquor market, but the probation condition imposed by the court had nothing to do with reversing that injury and making liquor more available to those who wanted to buy it. The condition, though desirable, was not related to repairing the injury caused by the violation.

**21.** Other facts distinguish these cases. In *Prescon,* the government appealed the sentence on the ground it was imposed as an alternative to

the payment of a fine. In the instant case, the court imposed fines that were, except as to one defendant, identical to those sought by the government. Hence the government cannot be heard to complain that the probation condition is an alternative to the fines. *Fiore v. United States,* reversed a sentence under § 3651 on the ground that the defendant's probation was improperly conditioned upon his payment of a fine imposed upon his corporation, which was in excess of the maximum fine to which he was individually subject. The court dealt with an impermissibly high fine, not a construction of § 3651. The sentences in *Fiore v. United States* and *Prescon* were overturned for exceeding the statutory limit. Such is not the case here.

ty. service and their companies to donate milk to charity.

*Supra,* 698 F.2d at 913 (footnotes omitted).

The court of appeals expressly rejected the government's argument that payment of money to any party other than the United States Treasury is illegal under § 3651. The court reasoned that the statute merely identifies several sentencing alternatives, but that they are not exclusive and the sentencing judge is not limited by them.

The sentence formulated by this court falls far short of what the Eighth Circuit would allow. *United States v. William Anderson Co., supra.* The Eighth Circuit held that a condition of probation involving a purely monetary payment, imposed solely to achieve restitution, was not limited by the restitution section of the Probation Act. *United States v. William Anderson Co.* indicates that the § 3651 limitations should be construed narrowly. This interpretation is consistent with the remedial nature of the Act. *See e.g., Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967); *Chewning v. Schlesinger,* 471 F.Supp. 767, 774 (D.D.C.1979). Finally, the purpose of the Act, to give judges broad discretion in fashioning sentences, suggests that implied exemptions from that authority ought to be narrowly construed.[22]

Were this court to adopt the government's position, then its ability to devise flexible sentences in the interests of justice would be severely curtailed. Any community service condition can be given a monetary value. Under the government's logic any such condition could arguably be limited by the restitution section. Such a con-

struction would severely impede judges from the "creative" sentencing referred to in *United States v. Mitsubishi Int'l Corp., supra,* 677 F.2d at 785 and *United States v. William Anderson Co., supra,* 698 F.2d at 913.[23]

■ In narrowly construing the limitations of the restitution section of the Probation Act, this court holds that in an order of a non-monetary, community service condition, for the purposes of deterrence and rehabilitation, as well as to make symbolic restitution, the beneficiaries need not be those directly aggrieved by the violations so long as there is a reasonable relationship between them and the defendants' illegal conduct, and so long as the community service serves to reverse the damage done by that conduct.

■ The government also contends that the donation of baked goods sentence is controlled by the § 3651 provision that restitution is limited to the "actual damages" sustained by the "aggrieved parties." The court rejects the government's argument because as previously discussed, the sentences require the defendants to perform community service, but not to provide restitution. Thus, the limitation that the government seeks is strained and inapplicable. Even assuming *arguendo* that the sentence is controlled by this limitation, the court for two reasons finds the amount of the community service permissible. First, the government lacks standing to complain that the amount of an order of restitution is excessive. *See Higdon v. United States,* 627 F.2d 893, 899 n. 14 (9th Cir.1980).

22. The limits on restitution are implied because the clear language of § 3651 does not limit restitution but merely states that the court "*may*" order restitution to aggrieved parties in the amount of their actual injuries. Indeed, the Eighth Circuit declined to draw that implication reasoning that the purposes of the statute are very broad, and in listing four possible allowable conditions Congress meant *only* to emphasize the court's power to order these several, non-exclusive, sentencing alternatives. *William Anderson, supra,* 698 F.2d at 914.

23. The government's interpretation of § 3651 does not distinguish between community ser-

vice and restitution. Thus, it is unclear whether the government would have objected to the sentences if the court set the donation condition in terms of pounds rather than dollars of pastry. *See* Transcript of Hearing, Jan. 31, 1983 at 53–54. The distinction as to whether sentences are limited under § 3651, however, should not turn on questions as to the form of the sentence. The determination should instead be based on distinguishing between purely monetary payments designed to compensate victims, and non-monetary sentences designed to accomplish other goals.

Second, the court finds that the amount of damages can not accurately be determined. The value of the community service required, however, even if added to the amount of the negotiated settlement in the private antitrust cases, is well within the actual damages sustained by the consuming public over nearly two decades of price fixing.

## CONCLUSION

The sentences in this case were imposed in a complex situation, inviting the court to fashion "creative" sentences. *See United States v. Mitsubishi Int'l Corp., supra,* 677 F.2d at 788. The area in which these defendants operate suffers from high unemployment and an eroding tax base. To extract larger fines and remove these resources from this community which has for a long time suffered the injury of the violations, would be grossly unfair. Finally, although arrangements have been made for some of the "aggrieved parties" to receive restitution through settlements of civil actions, those who paid the largest part of the fixed prices, the ultimate consumers, remain uncompensated.

These sentences are designed to achieve the following objectives: 1) deterrence, 2) rehabilitation, 3) incorporation in the resolution of this case of as many components of a guilty plea as possible, 4) preservation of jobs at the defendants' plants, and 5) compensation of aggrieved parties. It is also hoped the donations will bring some sweetness to hungry people who probably have missed more than one opportunity to buy the defendants' products because the price, illegally set by the defendants, was too high.

Wherefore this court rejects the government's contention that a community service condition, other than one involving a purely monetary payment, is limited by the resti-

tution section of the Probation Act.[24] . The court concludes that the sentences are proper under the Probation Act. The government's application to correct the form of the sentence is granted. The government's contention that the beneficiaries of the community service ordered herein must be "aggrieved parties" within the meaning of § 3651 is rejected.

SO ORDERED.

---

**24.** Counsel for the government has indicated that the Department of Justice's opposition to the sentences is part of a policy that has also resulted in the recent challenges to sentences in the Eighth and Tenth Circuits. *See* Transcript of sentencing hearing, January 31, 1983, at 52–56. This position, which attempts to circum-

scribe the court's sentencing discretion, is particularly puzzling in light of a recent speech by the Attorney General of the United States supporting *alternative forms of punishment. See* Cecil Sims Lecture, Vanderbilt Law School, Hon. William French Smith, March 3, 1983.